**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ANTHONY VINES and DOMINIQUE**     **PLAINTIFFS**
**LEWIS, Each Individually and on**
**Behalf of All Others Similarly Situated**

**V.**     **NO. 4:18-CV-0509-BRW**

**WELSPUN PIPES, INC.; WELSPUN**     **DEFENDANTS**
**TUBULAR, LLC; and WELSPUN USA, INC.**

**RENEWED JOINT MOTION TO DISMISS WITH PREJUDICE AND FOR APPROVAL OF SETTLEMENT AGREEMENT**

      Plaintiffs Anthony Vines and Dominique Lewis ("Plaintiffs") and Defendants Welspun Pipes, Inc., Welspun Tubular, LLC, and Welspun USA, Inc. (Defendants), by and through their undersigned counsel, jointly submit the following Renewed Motion to Dismiss With Prejudice and For Approval of Settlement Agreement:

      1.      On May 19, this Court ordered the Parties to begin settlement negotiations from scratch, and should they reach an agreement, to submit a Renewed Motion of Approval of such a settlement. *See* ECF No. 88.

      2.      Accordingly, the Parties immediately engaged in settlement negotiations, which lasted until May 28, when the Parties reached an agreement and finalized the Settlement Agreement attached here as Exhibit A. The Parties now request this Court's approval of that Settlement Agreement and submit this Renewed Motion of Approval and Motion to Dismiss With Prejudice.

      3.      Plaintiff filed this action on August 7, 2018, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) and Arkansas Minimum Wage Act (AMWA), Ark. Code Ann. § 11-4-201, et seq. as a collective and class action. *See* ECF No. 1. On an individual and collective basis, Plaintiffs asserted that Defendants failed to pay Plaintiffs and others similarly

simulated individual for all overtime hours owed, when applicable, resulting in the underpayment of overtime wages. Plaintiffs also sought liquidated damages and attorneys' fees. *Id*.

4. Plaintiffs are former employees of Defendant Welspun Tubular, LLC, who worked as production employees. Plaintiffs allege that their overtime pay did not include all compensatory work time and, hence, were not paid correctly for certain alleged overtime work performed by Plaintiffs. Defendants dispute that Plaintiffs were not compensated for all hours worked, including overtime pursuant to the FLSA and AMWA, and Defendants Welspun Pipes, Inc. and Welspun USA, Inc. specifically deny that they employed Plaintiffs or any others identified by Plaintiffs in their Complaint at any time.

5. The Parties engaged in discovery regarding Plaintiffs' time records, compensation, and issues related to the underlying merits of Plaintiffs' claims and Defendants' defenses.

6. Following a renewed round of negotiations from scratch beginning on May 20, 2020, the Parties have entered into a Settlement Agreement and Release of Claims (Settlement Agreement) for Plaintiffs and others resolving the liability damages asserted by Named Plaintiffs and all Opt-In Plaintiffs. Plaintiffs entered into this settlement to avoid the risk inherent in any litigation. Plaintiffs acknowledge that the parties disagree as to legal and fact issues on all claims. Plaintiffs seek to avoid the risk of a partial or full defense verdict.

Defendants entered into this settlement to avoid the costs and interference of business operations involved in FLSA litigation.

7. To resolve this matter on a class-wide basis, the Parties further agreed to issuing a Second Notice of Consent to Join this lawsuit to the production employees identified by Plaintiffs in their Complaint but who did not elect to join this lawsuit during the opt-in period

authorized by this Court.  *See* ECF No. 26.  This second notice procedure was approved by this Court in its Order on September 30, 2019.  *See* ECF No. 60.

8. Defendant was not obligated to agree to a second sending of notice to potential class members, many of whom would likely never have exercised their right to join this lawsuit absent the second notice that they received. Furthermore, many of the individuals who joined as a part of the second notice group likely would have had their claims extinguished by the statute of limitations had they not received this second notice.

9. In recognition of these facts, particularly that Defendants had no obligation to agree to a second notice period and could have allowed many claims it is now settling to extinguish, the parties agreed to settle any claims that came in under the second notice period at a reduced rate. This reduced percentage still reflects a fair settlement of those opt-ins' claims, as similar defenses exist to their claims, the possibility of losing at trial or through motion practice remains, and many would not have been able to or aware that they could exercise their right to join the lawsuit, and they would lose damages or even their entire claim due to the passage of time.

10. To ensure the Settlement Agreement releasing claims under the FLSA and AMWA is valid and enforceable, the Parties now renew their request judicial review and approval of the Settlement Agreement.  Settlement agreements resolving claims brought pursuant to these statutes are typically subject to court approval. *See Younger v. Centers for Youth & Families, Inc.*, No. 4:16-CV-00170-KGB, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017) (citing 29 U.S.C. § 216(b)). Before approving a settlement, the Court must ensure that the parties are not negotiating around the law's requirements, and that the settlement represents a fair and reasonable resolution of a bona fide dispute. *See id.*  The Eighth Circuit Court of Appeals has not directly addressed the factors to be considered in deciding motions

for approval of FLSA settlements. However, other courts have scrutinized such settlements for fairness in two steps:

> First, the court should consider whether the compromise is fair and reasonable to the employee (factors 'internal' to the compromise). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (factors 'external' to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

*Id.* (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

11. Here, the settlement between the Parties and the identified class represents a fair and equitable compromise of bona fide wage and hour disputes. The settlement follows litigation, including the sharing of time and pay records, by experienced counsel representing both Parties. The Parties also engaged in a renewed round of settlement negotiations, from scratch, conducted by opposing counsel at arms' length. The Parties understand that, inherent to litigation, there are uncertainties and risks. The Parties understand the expense associated with further pleadings, a jury trial, and, potentially, an appeal. The Parties have determined that it is in their mutual interest to resolve the litigation as set forth in the Settlement Agreement. This decision included evaluating the likelihood of prevailing on the merits of their claims and defenses, including the proper method for calculating damages, as well as the amount of any additional fees and costs. Plaintiffs have specifically considered the potential value of his claims and have individually concluded that the proposed settlement provides a fair and reasonable resolution of the claims. Defendants supports this result because it eliminates the uncertainties, risks, and cost of further litigation and appeals, despite Defendants' denial of Plaintiffs' claims.

12. The Parties have reached an amicable resolution as to Plaintiffs' individual claims on the same basis provided for the entire class.

13. The Parties have not yet negotiated the payment attorneys' fees and costs, but are continuing to negotiate while the Court reviews the settlement of liability damage payments to Named Plaintiffs and Opt-In Plaintiffs for approval, as requested by the Parties.

14. Attorneys' fees in this case will be negotiated <u>entirely separately</u> from any negotiation of Plaintiffs' and opt-in Plaintiffs' settlement amount, and will have no effect on the amount that Plaintiffs' received, which is itself a result of arms-length negotiations based on the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses.  This separate negotiation is ensured because the Parties have reached a settlement of Plaintiffs' and Opt-In Plaintiffs' claims and are now seeking Court approval of that settlement, without the negotiation of attorneys' fees having occurred to this point at all.

15. The Parties will now address some individualized concerns the Court raised in its Order (ECF No. 60):

   a. The $211,666.36 going to those who joined the case under the first notice procedure is not to an undisclosed amount of individuals, but rather to 163 Plaintiffs and opt-in Plaintiffs.  The individual breakdown is attached to the Settlement Agreement (Exhibit A) Motion as Addendum A.  In the experience of Plaintiffs' counsel and Defendants' counsel, these individual totals are well within reason, and even higher than many similar cases in which the off-the-clock claims are comprised of minutes on either side of a shift being rounded.

   b. For the second notice class, a total of 102 individuals returned their consents to join within the allotted time. Of those, fifteen (15) did not have any damages within the two-year statute of limitations agreed to by the Parties. Of the remaining 87, four had no time rounded and thus no damages. The remaining individuals will receive a total of $57,673.24 with the individual

breakdown attached to the Settlement Agreement (Exhibit A) as Addendum B.

16. This settlement, while complex, has been made in good faith and results from a bona fide disagreement over the merits of Plaintiffs' claims. The Parties, upon the Court's request, began settlement discussions from scratch and, after a good faith, arms-length negotiation process, agreed to liability damages in the same amount as the prior settlement. This was not a rubber stamping, but instead an investigation of the fairness of those damages, with both sides negotiating for potential changes to the amount before reaching an agreement that the previous amount represented the most fair compromise for all Parties. The Parties are in agreement settlement amounts for both the first and second notice classes are fair, and properly reflect the strengths and weaknesses of the claims and defenses presented in this matter.

17. Accordingly, Plaintiffs and Defendants jointly seek dismissal, with prejudice, of Plaintiffs' claims in this action.

Wherefore, Plaintiffs and Defendants request that the Court enter an order dismissing with prejudice this lawsuit in its entirety and approving the Settlement Agreement, and for all other relief to which they are entitled.

Respectfully submitted,

J. Bruce Cross (ABA #74028)
Gregory J. Northen (ABA #2011181)
**CROSS, GUNTER, WITHERSPOON
 & GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone:  501- 371-9999
Fax:  501-371-0035
Email: bcross@cgwg.com
Email: gnorthen@cgwg.com
**ATTORNEYS FOR DEFENDANTS**

And

        Daniel Ford, AR Bar No. 2014162
        Josh Sanford, AR Bar No. 2001037
        SANFORD LAW FIRM, PLLC
        One Financial Center
        650 South Shackleford Road, Suite 411
        Little Rock, AR   72211
        Telephone:  (501) 221-0088
        Facsimile:  (888) 787-2040
        daniel@sanfordlawfirm.com
        josh@sanfordlawfirm.com
        **ATTORNEYS FOR PLAINTIFFS**