**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ANTHONY VINES and DOMINIQUE LEWIS,**                                          **PLAINTIFFS**
**Individually and on Behalf of All Others Similarly Situated**

**VS.**                                          **4:18-CV-00509-BRW**

**WELSPUN PIPES, INC.,** *et al.*                                          **DEFENDANTS**

<u>**ORDER**</u>

Pending is Plaintiffs' Motion to Approve Attorney Fees (Doc. No. 92).  For the reasons

set out below, the motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs' lawyers

are entitled to $1.00 in lawyers' fees and $2,790.87. in costs from Defendant.

**I.      BACKGROUND**

The parties first sought approval of settlement in this run-of-the-mill FLSA collective

action in September 2019.[1]  That proposed settlement set the lawyers'[2] fees at $89,000 and the

amount going to (at that time) an undisclosed number of Plaintiffs was $211,666.36. After

denying the request for approval, I requested (1) a break-down of both the First and Second Opt-

In Classes; (2) billing records for the entire litigation; and (3) an example of the contingency fee

agreements with individuals in both opt-in classes.[3]

On March 19, 2020, the parties filed a second motion, but provided neither Plaintiffs'

billing records nor a sample contingency fee agreement.[4]  I denied the motion.[5]  I denied a third

---

[1]Doc. No. 59.

[2]I use lawyer rather than counsel or attorney, unless I am quoting something.

[3]Doc. No. 60.

[4]Doc. No. 79.

[5]Doc. No. 80.

motion on April 13, 2020 after it became apparent that liability damages and lawyers' fees were not negotiated separately, as required by Eighth Circuit precedent.[6]  In a fourth motion for approval, Plaintiffs' lawyers ("SLF")[7] insisted that I "reached conclusions that do not comport with the reality of the negotiation process."[8]  I denied the motion.[9]

Continuing to disagree with my finding that liability damages and fees were not negotiated separately, SLF filed another brief on the subject.[10]  I denied the motion and informed it that "regardless of how this issue is resolved, Defendant will not pay for the fees [SLF] is accumulating while continuing to litigate this specific issue."[11]  I directed the parties to start settlement negotiations anew and to not discuss fees until they settled the liability damages.  The parties reached an agreement regarding liability (which I approved) but not fees.[12]

In the pending motion for fees and costs, SLF continues to demand the $96,000 from the original attempt at settlement.  Alternatively, SLF claims it "incurred approximately $64,682.58 in attorney's fees" and $3,512.87.[13]

---

[6]Doc. No. 83.

[7]The Sanford Law Firm.

[8]Doc. No. 84.

[9]Doc. No. 85.

[10]Doc. No. 87.

[11]Doc. No. 88.

[12]Doc. Nos. 89, 90.

[13]Doc. No. 93.

## II.    DISCUSSION

The Fair Labor Standards Act allows for reasonable lawyers' fees upon successful litigation of the claim.[14]  Congress included the fee-shifting language so citizens would have access to the courts to enforce their federal rights.[15]  While that concept is good in theory, it has become apparent that, in practice, lawyers' fees are the driving force in many FLSA cases.[16]  Unfortunately, this often results in abuse, as seen in this case.

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[17]  It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[18]  Then the court should "adjust the fee upward or downward on the basis of the results obtained."[19]  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or

---

[14]29 U.S.C.A. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

[15]*Morales v. Farmland Foods, Inc*., No. 8:08CV504, 2013 WL 1704722, *5 (D. Neb. April 18, 2013) (The "purpose of the FLSA attorney's fee provision is to insure effective access to the judicial process," and "encourage the vindication of congressionally identified policies and rights.").

[16]See *Jones v. RK Enterprises of Blytheville, Inc*., No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (holding that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction" after finding that the plaintiff "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees").

[17]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[18]*Id.*

[19]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

she had been representing a paying client who was billed by the hour in a comparable case."[20]

"A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce

windfalls to attorneys."[21]

"An attorney fees award under a fee-shifting statute should be comparable to what is

traditionally paid to attorneys who are compensated by a fee-paying client."[22]  Hours that were

not "reasonably expended" must be excluded.[23]  "Cases may be overstaffed, and the skill and

experience of lawyers vary widely. Counsel for the prevailing party should make a good faith

effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from

his fee submission."[24]

### A.    Requested Hourly Rates

SLF requests the various hourly rates in this case: $325 an hour (Josh Sanford); $275 an

hour (Anna Stirtz); $250 an hour (Vanessa Kinney); $225 an hour (Josh West, Steve Rauls);

$190 an hour (Stacy Gibson) $175 an hour (Daniel Ford, Chris Burke, Blake Hoyt, Lydia

Hamlet, Sean Short); $150 an hour (Allison Koile; April Rheaume); $125 an hour (Rebecca

Matlock); and $100 an hour (Tess Bradford).[25]  One lawyer, who was not identified listed an

---

[20]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in original).

[21]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

[22]*Morales,* 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[23]*Hensley*, 461 U.S. at 434.

[24]*Id.*

[25]Doc. Nos. 92-1, 92-2.

hourly rate of $350 an hour.[26]  The lawyers' experience range from over 20 years (Sanford and

Stiritz) to one year (Bradford).  Most of them have five to ten years' experience.[27]

 According to Mr. Sanford's affidavit, the rates are consistent with lawyers in the area

who work on similar cases.  SLF points out that just last month, Judge Baker approved its rates

in an uncontested fee petition.[28]  On the other hand, last month Judge Marshall rejected the $325

an hour rate, and found that a reasonable rate for Mr. Sanford was $250 an hour.[29]  Mr. Sanford

also ignores the fact that his request for $325 an hour has repeatedly been rejected by judges in

both the Eastern and Western Districts of Arkansas.[30]  Yet, here he is again seeking $325 an

hour, as if it is an opening bid in a negotiation.

 Interestingly, some time in May 2019, Mr. Josh Sanford's hourly rate increased from

$225 an hour to $325 an hour – an 30% increase.[31]  Around that same time, Mr. Ford's rate went

from $125 an hour to $150 an hour – an 17% increase.  Neither increase was explained (nor were

any of the random increases for the other lawyers).  Had SLF not been retained on a contingency

---

[26]Doc. No. 92-2.  On 5/21/20, MQM listed an hourly rate $350 to email a prospective client

[27]Doc. No. 94-1.

[28]*Estes, et al. v. Cristopher Buell, et al.*, No. 4:18-CV-00026-KGB, Doc. No. 50 (E.D. Ark. May 25, 2020).

[29]*Bryan v. Mississippi County, Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020).

[30]*Aubrey v. Zaman, LLC.*, No. 4:17-CV-00446-JLH (E.D. Ark. Nov. 29, 2018) (granting $275/hr rather than the requested $325/hr); *Wolfe v. Arafa*, No. 5:17-CV-00245-DPM (E.D. Ark. Aug. 8, 2019) (same); *Franklin v. Magnolia Flooring Mill, LLC*, No. 1:17-CV-01073, 2019 WL 2427952, at *4 (W.D. Ark. June 10, 2019) (holding that an hourly rate of $325 for Mr. Sanford was too high); *Perez v. Mian Enterprises, Inc*., No. 2:17-CV-02162, 2018 WL 10394810, at *2 (W.D. Ark. Oct. 26, 2018) (allowing $275/hr rather than the requested $325/hr).

[31]Doc. No. 92-1.

basis, it would have been required to notify its client of the rate increase and included the new rate in the billing.

After reviewing the records, it also appears that the rates are arbitrary and, therefore, unreliable.  For example, on February 12, 2020, Mr. Ford was billing at $175 an hour, but two later it was $150 an hour.  Two weeks later, Mr. Ford was back up to $175 an hour.[32]  On two occasions, Mr. Ford billed different hourly rates on the same day.[33] On April 3, 2020, Mr. Ford billed one entry at $125 an hour and another at $175 an hour.  On April 27, 2020, he was back to $125 an hour.  Also noteworthy, April Rheume billed at $125 an hour in March 2019, $150 an hour on April 4, 2019, but was back down to $125 an hour on April 12 and 15, 2019.[34]

SLF has provided no evidence of what it has ever charged an actual fee-paying client.[35] It relies on previously-awarded hourly rates by the court, but "[p]rior awards are not direct evidence of market behavior; the court is not a legal souk."[36] Additionally, most firms would provide only the previously-awarded rates that supported a higher rate it was seeking, which is what SLF did here when it referred to recent approval of its rates by Judge Baker, but ignored denial of the rates by Judge Marshall and others.

---

[32]See Doc. No. 92-1 at 2/12/20, 2/14/20, 2/28/20.

[33]Doc. No. 92-2 at 4/3/20 and 5/22/20.

[34]Doc. No. 92-1 at 3/27/19, 4/4/19, 4/12/19, 4/15/19.

[35]*McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("Sindel's regular hourly billing rate provides a useful starting point for determining a reasonable fee. We have said that where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award."); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What Still charges clients is powerful, and perhaps the best, evidence of his market rate.").

[36]*Dillard*, 213 F.3d at 1355.

Additionally, SLF points to the fact that this case was taken on a contingency-fee basis.

Mr. Sanford's affidavit reads:

> To be clear, the "contingency" fee arrangement between Plaintiffs and Sanford Law Firm is not a contingency fee in the traditional sense whereby an attorney takes a portion of the plaintiff's recovery. Rather, Sanford Law Firm relies solely on the fee-shifting provisions of the FLSA and AMWA to recover their fees in this case.[37]

This sworn statement is belied by the language of the contingency fee agreement, which provides that if the lawyers are awarded lawyers' fees from a defendant, the fees will be "paid to the attorney in addition to the contingent fee . . . ."[38] This language appears to be contrary to the purposes of the FLSA[39] and contrary to law.[40] Based on these contradictions, it is not clear to me if SLF ever enforces its contingency fee agreements. Be that as it may, SLF asserts that it will not enforce the 40% contingency fee agreement in this case.[41] This is reasonable, considering that

---

[37]Doc. No. 92-4.

[38]Doc. No. 81-5.

[39]*Zegers v. Countrywide Mortg. Ventures, LLC,* 569 F. Supp. 2d 1259, 1267 (M.D. Fla. 2008) ("Because the FLSA was intended to provide workers with the full compensation they are due under the law, requiring a plaintiff to pay his or her attorney a fee in addition to what the Court determines is a reasonable fee for the attorney' services is contrary to Congressional intent.") (citing cases).

[40]*Wilmington v. J.I. Case Co.*, 793 F.2d 909, 923 (8th Cir. 1986) ("Courts have a duty under section 1988 to assure that the award of fees is reasonable, and the concept of reasonableness precludes an award that serves merely as a windfall to already amply compensated attorneys. . . . [T]o avoid a windfall for Wilmington's counsel, we order that the statutory award be modified to provide that it shall be applied toward the amount due Wilmington's attorneys under the contingent fee agreement, not in addition to the amount due under that agreement."); *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1189 (E.D. Cal. 2018)("[T]he payment structure contemplated here is essentially a contingency bonus. This arrangement virtually assures that counsel will be over-compensated for their work.").

[41]Doc. No. 84 (asserting that "no contingency fee is being taken from Plaintiffs' and the classes' damages . . . .").

receiving fees pursuant to a fee-shifting statute and then taking 40% from the clients' recovery would result in an impermissible windfall for the lawyers.[42]

SLF contends that the rates are justified because of the risk and delayed payment associated with contingency fee cases.[43]  While this is a factor, it has much less weight in an FLSA case than it does in a civil rights case.  Both types of cases are intended to vindicate rights protected by Congress, but the length of litigation is much longer in civil rights cases and the odds of success are much lower.  Seasoned lawyers, such as in this case, should be able to quickly assess the merits of an FLSA claim and, typically, find resolution with the opposing counsel.  The point is, although there is a risk, in FLSA cases, it is much smaller than other fee-shifting cases.

SLF argues that "[w]here specialized areas of the law are concerned, 'the national market may provide a reasonable hourly rate.'"[44]  FLSA litigation is not so nuanced that a national rate would be justified.  Furthermore, the Eighth Circuit has held that, "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community <u>where the case has been litigated</u>."[45]

Finally, there appears to be no shortage of lawyers willing to take FLSA cases or evidence that they take away from the focus on other cases.  In the past three years, 375 FLSA cases have been filed in the Eastern District of Arkansas.

Based on a review of the submission and my knowledge of the local prevailing rate, I find that the reasonable hourly rates is $250 an hour for the senior attorneys (Sanford, Stiritz), $175

---

[42]*Zhao Hui Chen v. Jin Holding Grp.*, No. 10 Civ. 0414(PAC), 2012 WL 279719, at *4 (S.D.N.Y. Jan. 31, 2012) ("The [FLSA] was not designed to create a windfall for attorneys.").

[43]Doc. No. 92-4.

[44]Doc. No. 93.

[45]*Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (emphasis added).

for the senior associates (Kinney, Rawls, Short, Hamlet, Burks, West), $150 for the junior

associates (everyone else), and no change for Ms Bradford.

### B.      Hours Expended

Now I must consider the reasonableness of the hours expended.  This is not the first time

that SLF has been told that its claimed hours are unreasonable.  Let me be clear, I am not saying

that the lawyers are not doing the work listed in the billing records.  I am saying that no

reasonable, efficient law firm would practice this way, but for the fact that it primarily engages in

fee-shifting litigation.  Certainly, no fee-paying client would tolerate these practices.  What's

more troubling is that SLF continues the practice after repeatedly being called out for it.  Once

again, I must be an auditor because SLF ignores the warnings that have been given repeatedly.

The following are just a few examples of issues that warrant a reduction in hours:

**Overstaffing** – SLF has repeatedly been scolded for overstaffing cases, which results in

incessant, intra-office memos and conferences designed to unreasonably increase fees.  Rulings

by other courts could not be clearer in their scrutiny SLF's practices:

- "[F]ifteen time keepers on a single case resulted in many charges for intraoffice conferences to discuss various assignments."[46]

- "Four main lawyers, with assists from five more, strikes the Court as too many hands."[47]

- "Involving two lawyers also ran the bill up some with needless coordination."[48]

---

[46]*Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *7 (W.D. Tex. Jan. 3, 2019).

[47]*Pierce v. Big River Steel LLC*, No. 3:17-CV-63-DPM, 2017 WL 5709905, at *2 (E.D. Ark. Nov. 13, 2017), vacated in part sub nom. *Barbee v. Big River Steel*, LLC, 927 F.3d 1024 (8th Cir. 2019).

[48]*Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012).

- "[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer.[49]

- "Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."[50]

- "[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."[51]

- "These billing records raise questions about the billing practices of the Sanford Law Firm.  First, Cook had twelve attorneys work on her case.  At most, this was a one-attorney case."[52]

- "Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys, *see id.*, it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate attorneys should have billed time to this rather uncomplicated wage-and-hour case."[53]

- "While some communication between members of a firm working the same case is to be expected, the amount of time that Plaintiff's counsel would have Defendants pay for in this case is excessive. Much of it appears to be oversight and, to some extent, education of Ms. Mahan during this litigation. Defense counsel should not be responsible for Ms. Mahan's training or for duplicative time spent by Rauls or Sanford discussing tasks performed by Ms. Mahan."[54]

---

[49]*Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016).

[50]*West* v. Zedric's LLC, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019).

[51]*Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016).

[52]*Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at *2 (W.D. Ark. June 10, 2019).

[53]*Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018).

[54]*Burchell v. Green Cab Co., Inc.*, 2016 WL 894825, at *3.

- "The objection to the amount of internal conferences is well taken. The fee request includes $32,911.75 for in-house conferences, which is approximately one-fifth of the total fee request and is by far the largest category of the various categories in the fee request."[55]

- [T]here are numerous emails and telephone conferences between the two [lawyers] that unreasonably increased the hours spent on the case."[56]

- "[S]ix lawyers and a law clerk" is excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers."[57]

At least seven different judges have criticized SLF's repeated overstaffing of cases, and SLF has been on notice regarding this practice since at least 2012.  Yet, eight years later, SLF unabashedly continues to run up fees through overstaffing and asks that defendants pay the bill.

Perhaps it is willful blindness.  SLF asserts that its "billing practices were recently approved as reasonable in *Estes, et al. v. Cristopher Buell, et al . . . .*"[58]  Not exactly.  Absent from this assertion are two important details:  that motion was unopposed and SLF voluntarily "reduced their requested attorneys' fees for each individual attorney who worked on this case."[59] Furthermore, SLF ignores the ruling two weeks earlier in which Judge Marshall (in a contested fee petition) held that "six lawyers and a law clerk" was excessive and "too much time was spent on conferences, meetings, calls, and emails between lawyers."[60] I believe SLF's failure to cite Judge Marshall's ruling (or any of the others listed above) shows a lack of candor here.[61]

---

[55]*Coates v. Dassault Falcon Jet Corp.*, No. 4:17CV00372 JLH, 2019 WL 2931296, at *2 (E.D. Ark. May 8, 2019).

[56]*Jones*, 2016 WL 1091094, at *3.

[57]*Bryan*, No. 3:18-CV-00130-DPM, Doc. No. 68.

[58]Doc. No. 93.

[59]*Estes*, No. 4:18-CV-00026-KGB, Doc. No. 50.

[60]*Bryan*, No. 3:18-CV-00130-DPM, Doc. No. 68.

[61]*United States v. Sterling*, No. 19-1711, 2020 WL 2465642, at n.3 (8th Cir. May 13, 2020) ("Our panels expect attorneys to advise us when adverse precedent may control an issue

SLF involved 17 lawyers, 1 law clerk, and several assistants in this case.  There were over

250 intra-office conferences regarding a simple FLSA case.  Why?  The answer is obvious: more

fees.  In fact, a colleague from the Western District of Arkansas, expressed this exact sentiment:

> Excessive entries on the itemized billing records reflect intrafirm emails and
> conferencing between some of the twelve attorneys working on the case, which the
> Court suspects is done as a matter of standard practice at the Sanford Law Firm so
> that attorneys with higher hourly rates can bill unwarranted time on cases where the
> substantive work is done by attorneys with lower hourly rates.[62]

Judge P.K. Holmes also cited Rule 1.3 of the Arkansas Rules of Professional

Conduct and found that "[t]hese excessive intrafirm conferences and over staffed cases only serve

the attorneys' invoices and take away from time that could be spent protecting the client's legal

interests."[63] SLF can disagree with whether overstaffing and micro-managing cases is a

reasonable business practice, but defendants should not pay for the costly practice.  It appears to

me that the only way to make the point that SLF will no longer be compensated for this inefficient

practice is to impose a significant reduction in fees.

**Micro-Managing Associates –** Once again, SLF includes numerous hours that involve

micro-managing associates, who, based on their experience, do not (or should not) need it.  SLF

describes it this way: "because of the management style at the Sanford Law Firm, lesser-

experienced attorneys are able to independently manage their own cases with the oversight of

more experienced attorneys and supported by a firm culture of collaboration and accessibility to

all Sanford Law Firm attorneys."[64]  This may be true, but the result is a meter is constantly

---

they are raising.").

[62]*Cook*, 2019 WL 2418753, at *2.

[63]*Id.* at n.2.

[64]Doc. No. 92-4.

running because senior lawyers are managing every aspect (even the simple ones like reading notice of electronic filings or reviewing consents to join) of the case.  The opposing party is not responsible for funding a new lawyer's real-world, post-graduate education.  Additionally, it is unreasonable to perform this much oversight over an associate who has been practicing six years and specializes in FLSA cases.  This too has been pointed out to SLF before.[65]

**Reading Filing by Co-Counsel –** I have previously warned SLF that "billing to read a notice of a filing by co-counsel (that the invoice indicates both lawyers worked on) is duplicative."[66]  Still, SLF seeks to be reimbursed for doing just that over 24 times.  Even more egregious, Mr. Sanford repeatedly billed to read a motion that he filed.[67]

**Secretarial Work** – As usual, SLF asks to be reimbursed at lawyers rates for secretarial work.  There are over thirty entries for lawyers doing things such as filing consents to join, filing notices of approval, mailing consents to client, working on client file, preparing contracts for clients, and examining signed contracts.  SLF has repeatedly been told that these tasks will not be compensated at a lawyer's rate.[68]

---

[65]*Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *2 (W.D. Ark. Dec. 3, 2018) ("Second, the Motion for Fees never explains why this rather granular level of management and oversight was warranted for an attorney like Mr. Hoyt, who graduated from law school cum laude in 2014, has been in practice for four years, and has served "as both lead and co-counsel on bench and jury trials throughout various Arkansas circuit and district courts."); *Jones v. RK Enterprises of Blytheville, Inc*., 2016 WL 1091094, at *5 ("Based on the information on Mr. West in the affidavit attached to the motion for fees, I believe he could have handled this case with little oversight from Mr. Sanford. Instead, there are numerous emails and telephone conferences between the lawyers at the firm that unreasonably increased the hours spent on the case.").

[66]*Jones*, 2016 WL 1091094, at *4.

[67]See, *e.g.*, Doc. No. 92-1 at 10/29/18, 3/26/19, 3/28/19, 4/1/19, 4/5/19, 4/8/19, 4/9/19, 4/10/19.

[68]*Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) ("[W]hile counsel may prefer to do his own electronic filing, it is not right to charge the

**Reviewing Consent Forms** – As in other cases, SLF spent too many hours reviewing consent forms.[69]  The standard practice for SLF appears to be that one lawyer (but sometimes more) examines new consents to join, examines a memo on new consents, conferences with other lawyers on new consents, and again reviews consents after they are filed.[70]  With multiple lawyers billing 0.1 hours four times for over 200 consents, the expense, unnecessarily, rises quickly.

**Double Billing** – This practice is also prevalent in the billing records.  For example, on August 16, 2018, Tess Bradford billed three times for receipt and review return of summons; but there was only one summons returned.  Additionally, Mr. Sanford billed for performing the same activity.[71]  In fact, at least two lawyers billing for the same task happened no fewer than 26 times.[72]  Again, SLF has been scolded before regarding this practice.[73]

**Unclear Billing** – There are at least twelve entries where the billing is unclear, because the entry is either redacted or makes no sense.[74]  For example, "compose electronic

---

other side a rate of $275.00 an hour for twelve minutes' work for that task."); *Beauford v. ActionLink, LLC*, No. 4:12CV00139 JLH, 2014 WL 183904, *4 (E.D. Ark. Jan. 15, 2014) ("Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case."); *Jones*, 2016 WL 1091094, at *3 (holding that it is "not acceptable for lawyers to do their own filing and then charge a lawyer's rate.").

[69]*Bryan*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) ("Counsel also billed too many hours reviewing each consent form.").

[70]See, *e.g.*, Doc. No. 92-1 at 4/1/19 through 4/10/19.

[71]Doc. No. 92-1 at 8/16/18.

[72]See Doc. No. 92-1 on the following dates – 2018: 8/16/18, 8/30, 10/26, 11/05, 12/17; 2019: 2/25, 3/4, 3/12, 3/15, 5/2/19, 5/23, 7/1, 7/2, 7/15, 8/8, 8/15, 8/19, 8/29, 9/25, 9/30, 10/22, 10/23, 10/29, 11/1; and 2020: 1/6, 1/7.

[73]*Burchell*, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016) (holding that "Plaintiff's counsel engaged in duplicative billing—that multiple attorneys billed for performing the same task or that the same task was itemized more than once . . . .").

[74]Doc. No. 92-1 at 12/26/18, 3/11/19, 3/13/19, 3/14/19, 3/15/19, 3/18/19, 4/22/19, 4/25/19, 5/3/19, 5/6/19, 8/1/19, 11/1/19.

communication" does not mean anything of substance.  I cannot discern (or divine) whether the activity advanced the litigation or is even related to this case.[75]

**Calls With Clients** – It seems to me that there were far too many – well over 100 – unnecessary "telephone conference between attorney and client re: case update."  SLF attempts to justify this practice as good client communication.  Maybe, but it is still excessive.  Also, who is initiating these calls?  Is a lawyer necessary or could an assistant handle the call?  Is it reasonable to constantly update 200 clients on the status of the case?  A monthly email to all clients would be much more efficient, and avoid unnecessary fees that the opposition is expected to pay.

**Complexity of the Case** – This simple case did not require 17 lawyers.  It involved over 100 plaintiffs, but it was not complex.  In fact, it appears to me that Defendant did the heavy lifting – generating the payroll summary (which is the time-consuming task) – and SLF used that information to make a $450,000 settlement demand.  Additionally, this case would not have required SLF to turn away other work in order to adequately prosecute the case.  Again, this was a relatively straightforward case that fell directly within the lawyers' specialty.

The fact is, very little "legal" work was performed in this case, which is true of most FLSA cases.  The cases typically consist of a complaint (a tweaked form), a motion to certify class (a tweaked form), discovery from defendants, analysis of the discovery, and a settlement demand.  That is what happened in this case.  Once a class was approved, Defendant provided the appropriate discovery and negotiations started.  This is not legal rocket science.

**Additional Billing –** In a May 19, 2020 email, I advised SLF that it would not be reimbursed for continuing to litigate it disagreement with my finding that fees and liability were negotiated simultaneously.[76]  Undeterred, SLF submitted those hours with its fee petition.

---

[75]Doc. No. 92-1 at 2/26/20.

[76]Doc. No. 88.

**Self-Audit –** SLF made no effort in this case to audit it own records to remove redundant and unnecessary time.  Instead, it submitted everything and left sorting it to me.

**Substantial Settlement Offer –** "Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply."[77] "There is ample persuasive authority deeming it improper, unreasonable and non-compensable for a plaintiff's attorney to delay or sabotage an achievable settlement for the purpose of ratcheting up attorney's fees."[78]  "It is all too frequently the case that the only obstacle standing in the way of a settlement between a plaintiff and a defendant is the plaintiff's lawyer and his unreasonable demand for fees . . . . Thus, the parties are held hostage and this Court is left feeling that it has become a party to an extortion."[79]  Such was the case here.

SLF rejected a substantial settlement offer on August 15, 2019.[80]  Although SLF agreed with the liability damages offer, it wanted more fees – $115,000 rather than the $45,000 Defendant offered.  Remarkably, SLF had not even performed $25,000 worth of work.  Making this delay even more egregious is the fact that SLF was not ratcheting up attorneys fees by actually doing more work (although that eventually happened), it was simply holding out for more fees.  SLF was hanging over Defendant's head the threat of the fees that might be incurred if it did not pay the unreasonable (and unearned) fee SLF was demanding. This is unacceptable.

---

[77]*Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000).

[78]*Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1272 (S.D. Ala. 2013)

[79]*Spegon v. Catholic Bishop of Chicago,* 989 F. Supp. 984, 987 (N.D. Ill. 1998), aff'd, 175 F.3d 544 (7th Cir. 1999).

[80]Doc. No. 82-1.

### C.      Fees Demand

Quite often FLSA cases are driven by fees.  In this case, that became clear on August 15, 2019, when SLF agreed with Defendant's liability damages offer, but rejected the offer of $45,000 in fees – up from the $25,000 rejected the week before.  However, SLF, as reported by their records, had performed only $22,000 of work.[81] SLF countered with a demand of $115,000 for fees.  From this point forward, the liability damages was resolved, but SLF held out until Defendant blindly (and this happens far too often) agreed to pay fees of $96,000.[82]  But for what?  Certainly not for work performed or even reasonably anticipated to be performed.  Instead, it agreed to pay higher fees because SLF was leveraging the settlement on the fact that it could reject the reasonable offer and demand (and possibly get) even more fees later.

As I pointed out in previous orders, SLF essentially extorted the higher fees from Defendant by simultaneously settling liability damages and fees.[83]  Defendant was trapped because there would be no settlement until SLF received the arbitrary amount of fees it wanted, rather than the fees it earned.  This is contrary to the purpose of fee-shifting statutes, evidence of bad faith, and possibly in violation of the Rules of Professional Ethics.  Over twenty years ago, a federal judge in the Northern District of Illinois described the issue this way:

> Congress unquestionably had loftier goals in mind when it passed much of the legislation authorizing fee awards. This Court does not question the congressional wisdom behind these statutes, but rather the lawyers who have chosen to hijack these statutes for their own selfish ends.[84]

---

[81]*Id.*

[82]The liability damages were the same for the First Opt-in Class and regarding the Second Opt-In Class, Plaintiff stated "we accept your parameters there." Compare Doc. Nos. 59-1,  82-1,

[83]Doc. Nos. 83, 85.

[84]*Spegon v. Catholic Bishop of Chicago,* 989 F. Supp. 984, 987 (N.D. Ill. 1998), aff'd, 175 F.3d 544 (7th Cir. 1999).

FLSA cases are not conduits for funneling unearned fees into lawyers' pockets.

SLF continues point out that in *Barbee v. Big River Steel, LLC* "the Eighth Circuit held that the authority for judicial review of FLSA settlements 'does not extend to review of settled attorneys' fees.'"[85] I agree.  What SLF ignores is likely the most important part of the opinion: the parties must "negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim . . . ."[86]  Additionally, I must "ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client."[87]  Denials aside, SLF did not separately negotiate liability damages and fees in this case, which is exactly why SLF could pressure Defendant to agree to fees of $96,000, while SLF did less than $50,000 of work.  Try as it might, SLF cannot distort history – in this case liability damages were contingent on the fees, and, therefore, could not be approved under *Barbee*.  As I pointed out in the April 13, 2020 Order,[88] this finding is supported by SLF's own words, which they continue to ignore:

> While I understand the reticence on your client's part regarding the attorneys' fees number, I think focusing on the global offer should give them some comfort that they are getting a substantial discount on total liability + fees (which is upwards of $450k) that they could face should this go to trial . . . .[89]

Additionally, SLF admitted that when negotiating settlement "the primary factor considered was . . . the likely total amount of billing should a case with more than 250 plaintiffs

---

[85]Doc. No. 93 (quoting *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019)).

[86]*Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).

[87]*Id.* at n.2.

[88]Doc. No. 83.

[89]Doc. No. 82-1.

and opt-in plaintiffs proceed through extensive discovery, pre-trial, and trial."[90]  No party would willingly pay nearly double the amount claimed fees for work that was never going to be performed, unless it feared the opposition was going to force a trial.  Had liability and fees actually been negotiated separately, Defendant would not have had this fear, and certainly, would not have agreed to pay this exorbitant amount to settle the fees portion of the case.

In other cases, SLF has refused to turn over billing records to opposing counsel.[91]  Is there something to hide?  It seems to me that if SLF wants the opposition to pay its fees, SLF should provide the opposition with its billing records.  A fees demand is not an arbitrary number plucked out of thin air by SLF.  Here, the original fees demand of $115,000 was obviously a pipe dream.  Still, SLF has continued to attetmpt to justify the demand by claiming that fees would be at least that much if the case went to trial.  This case did not go to trial, which means that SLF never earned $115,000 in fees or even the $96,000 it convinced Defendant to blindly pay after simultaneously negotiating liability and fees.

*Barbee* cautioned against this very practice by requiring fees and liability to be negotiated separately.  In the pending motion, SLF complains that Defendant is getting a "windfall" by not being forced to pay the $96,000 it agreed to in the initial settlement negotiations.  Ironically, it is SLF who is not getting the windfall it extorted by demanding a fee that it never earned.  Of course, this all could have been avoided if the liability and fees negotiations had been performed separately, as required by *Barbee*.

---

[90]Doc. No. 81.

[91]*Bryan,* No. 3:18-CV-00130-DPM, Doc. No. 66.

As I have mentioned before in this case, if it weren't for the FLSA's use of phrase "shall" award a lawyers' fee I would be inclined to award nothing at all.[92]  Although I am required to award a fee,[93] the amount of the award is at my discretion.[94]  After considering SLF's incorrigible practices, the unreasonable $115,000 fee demand, SLF's attempts to drum up billable hours by extending the case, the numerous billing record deficiencies, and the attempted extortion of $96,000 in unearned fees by negotiating contrary to *Barbee*, I believe that a reasonable lawyers' fee in this case is $1.00.

### D.    Costs

SLF asserts that it incurred $3,512.87 in costs, which included filing fees, service costs, postage, and copies.  Based on the number of individuals involved in this case and the fact that two notices were mailed out, the costs seem reasonable, with one exception.  SLF is not entitled to reimbursement of $722 for "online research."[95] With this deduction, costs are $2,790.87.

---

[92]Doc. No. 83; 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

[93]Some courts have found that there are exceptions to the mandatory fee.  See *Sahyers v. Prugh, Holliday & Karatinos*, 560 F.3d 1241 (11th Cir. 2009) (finding no abuse of discretion by the district court in denying by denying lawyers' fees to a prevailing FLSA plaintiff); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying fees to a prevailing FLSA plaintiff because "[t]here are 'special circumstances' that can render such an award of attorney's fees unjust, and so-called nuisance settlements represent such a circumstance" ).

[94]*Fires v. Heber Springs Sch. Dist.*, 2014 WL 2441955 at *2 (8th Cir. June 2, 2014) (reviewing district court's decision to classify hours as excessive for abuse of discretion and "giving due deference to the district court's unique understanding of the legal and factual issues implicated by this matter and counsel's handling of them").

[95]*Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) (noting that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award") (quoting *Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983)).

Because Defendant has not had the opportunity to respond to the costs issue, it may file a motion to reconsider if it disputes the total.

## CONCLUSION

Based on the above reasons, Plaintiffs' Motion to Approve Attorney Fees (Doc. No. 92) is GRANTED IN PART and DENIED IN PART.  Plaintiffs' lawyers are entitled to $1.00 in lawyers' fees and $2,790.87 in costs from Defendant.

In the alternative, if the Eighth Circuit believes that I lack authority to award nominal fees, I would, based on everything discussed above, award $25,000 in fees – the amount unreasonably rejected by SLF in August 2019.  I must note that this would be especially painful in view of what I believe to be the singular intransigence of Plaintiffs' lawyers, but, as I have noted before, when the big dog barks, the little dog is to run back under the porch.

IT IS SO ORDERED this 9th day of June, 2020.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE