RE: Overstaffing and Excessive Billing in FMLA
Cases by The Sandord Law Firm

Dear Judge:

Enclosed is a copy of an Order in <u>Burton v. Nilkanth Pizza Inc., et al.</u> by the Honorable Billy Roy Wilson, United States District Court Judge.

It was signed and filed on August 24, 2020.

A FMLA case can be filed in state court.

You may see a Fee Petition in a FMLA case in your court from the Sanford Law Firm.

As such, Judge Wilson's Order may be helpful to you in analyzing and reducing an equally ridiculous fee petition.

Respectfully yours,

Friend of the Court

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SAHARA BURTON                                                                            PLAINTIFF

VS.                                      4:19-CV-00307-BRW

NILKANTH PIZZA INC., *et al.*                                 DEFENDANTS

<u>ORDER</u>

Pending is Plaintiff's Motion to Approve Attorney Fees (Doc. No. 44). For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART. Plaintiff's lawyers are entitled to $2,952.50 in lawyers' fees and $400 in costs from Defendants.

**I. BACKGROUND**

Plaintiff filed this run-of-the-mill FLSA collective action (but never requested conditional certification) on April 29, 2019.[1] Defendants answered, then provided Plaintiff with discovery (payroll and hours reports). Plaintiff filed a motion for partial summary judgment based on the reports. After Defendants retained new counsel, Plaintiff refiled the motion for partial summary judgment, and Defendants made an offer of judgment, which Plaintiff accepted. Unable to agree on lawyers' fees, Plaintiff filed a motion seeking $8,948.50 in fees and $400 in costs.

**II. DISCUSSION**

The Fair Labor Standards Act allows for reasonable lawyers' fees upon successful litigation of the claim.[2] Congress included the fee-shifting language so citizens would have

---

[1] Doc. No. 1.

[2] 29 U.S.C.A. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

1

access to the courts to enforce their federal rights.[3] While that concept is good in theory, it has become apparent that, in practice, lawyers' fees are the driving force in many FLSA cases.[4]

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[5] It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[6] Then the court should "adjust the fee upward or downward on the basis of the results obtained."[7] "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."[8] "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[9]

---

[3]*Morales v. Farmland Foods, Inc.*, No 8:08CV504, 2013 WL 1704722, *5 (D. Neb. April 18, 2013) (The "purpose of the FLSA attorney's fee provision is to insure effective access to the judicial process," and "encourage the vindication of congressionally identified policies and rights.").

[4]See *Jones v RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (holding that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction" after finding that the plaintiff "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees").

[5]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[6]*Id.*

[7]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

[8]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in original).

[9]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

2

"An attorney[s'] fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[10] Hours that were not "reasonably expended" must be excluded.[11] "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[12]

### A. Requested Hourly Rates

The Sanford Law Firm ("SLF") requests the following hourly rates in this case: $275 an hour (Josh Sanford); $225 an hour (Steve Rauls); $75 an hour (law clerk); and $60 an hour (staff).[13] According to Mr. Sanford's affidavit, the rates are consistent with lawyers in the area who work on similar cases.

SLF contends that "[b]ecause this Court has recently criticized attorney Sanford's usual hourly rate of $325.00, Plaintiff requests a discounted rate of $275.00. This is substantially less than other courts in Arkansas have awarded for Mr. Sanford's work."[14] Once again, SLF cites a case where Judge Baker approved his $325 an hour rate, but, once again, SLF ignores that fact that the fee request in that case was <u>uncontested</u>.[15] Notably, there appear to be just as many

---

[10]*Morales*, 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[11]*Hensley*, 461 U.S. at 434.

[12]*Id.*

[13]Doc. No. 45.

[14]*Id.*

[15]*Estes, et al. v. Cristopher Buell, et al.*, No. 4:18-CV-00026-KGB, Doc. No. 50 (E.D. Ark. May 25, 2020).

3

cases rejecting Mr. Sanford's $325 an hour rate as there are approving it. Yet, those cases are not cited by SLF. So, here are a few:

- *Aubrey v. Zaman, LLC.*, No. 4:17-CV-00446-JLH (E.D. Ark. Nov. 29, 2018) (awarding Mr. Sanford $275 an hour rather than the requested $325 an hour).

- *Wolfe v. Arafa*, No. 5:17-CV-00245-DPM (E.D. Ark. Aug. 8, 2019) (holding that the requested "hourly rates are high for a wage-and-hour case in the Eastern District of Arkansas" and awarding Mr. Sanford $250 an hour and Mr. Rauls $175 an hour, rather than the requested $325 and $225 an hour).

- *Franklin v. Magnolia Flooring Mill, LLC*, No. 1:17-CV-01073, 2019 WL 2427952, at *4 (W.D. Ark. June 10, 2019) (finding that "some of the claimed hourly rates are too high—namely the rates claimed for Mr. Sanford" and awarding $275 an hour).

- *Perez v. Mian Enterprises, Inc.*, No. 2:17-CV-02162, 2018 WL 10394810, at *2 (W.D. Ark. Oct. 26, 2018) (awarding $275 an hour, rather than the requested $325 an hour, to Mr. Sanford and $225 an hour to Mr. Rauls).

- *Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) (reducing Mr. Sanford's rate to $250 an hour and Mr. Rauls's rate to $175 an hour).

- *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *4 (E.D. Ark. June 9, 2020) (holding that $250 an hour was a reasonable rate for Mr. Sanford and $175 an hour was a reasonable rate for Mr. Rauls).

SLF has provided no evidence of what it has ever charged an actual fee-paying client.[16] It relies on previously-awarded hourly rates by courts, but "[p]rior awards are not direct evidence of market behavior; the court is not a legal souk."[17] Additionally, most firms would cite only the

---

[16]*McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("Sindel's regular hourly billing rate provides a useful starting point for determining a reasonable fee. We have said that where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award."); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What Still charges clients is powerful, and perhaps the best, evidence of his market rate.").

[17]*Dillard*, 213 F.3d at 1355.

4

orders that supported the higher hourly rate, which is what SLF did here when it referred to recent approval of its rates by Judge Baker, but ignored denial of the rates in the other cases.

Additionally, SLF points out that this case was taken on a contingency-fee basis. Mr. Sanford's affidavit reads:

> To be clear, the "contingency" fee arrangement between Plaintiffs and Sanford Law Firm is not a contingency fee in the traditional sense whereby an attorney takes a portion of the plaintiff's recovery. Rather, Sanford Law Firm relies solely on the fee-shifting provisions of the FLSA and AMWA to recover their fees in this case.[18]

As I have stated before, this sworn statement is belied by the standard language that appears in SLF's contingency fee agreement, which provides that if the lawyers are awarded lawyers' fees from a defendant, the fees will be "paid to the attorney in addition to the contingent fee . . . ."[19] Again, this language appears to be contrary to the purposes of the FLSA[20] and contrary to law.[21] Based on these contradictions, it is not clear to me if SLF ever enforces its contingency fee agreements. SLF also contends that the rates are justified because of the risk

---

[18]Doc. No. 44-2.

[19]*Vines*, 2020 WL 3062384, at *3.

[20]*Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1267 (M.D. Fla. 2008) ("Because the FLSA was intended to provide workers with the full compensation they are due under the law, requiring a plaintiff to pay his or her attorney a fee in addition to what the Court determines is a reasonable fee for the attorney' services is contrary to Congressional intent.") (citing cases).

[21]*Wilmington v. J.I. Case Co.*, 793 F.2d 909, 923 (8th Cir. 1986) ("Courts have a duty . . . to assure that the award of fees is reasonable, and the concept of reasonableness precludes an award that serves merely as a windfall to already amply compensated attorneys. . . . [T]o avoid a windfall for Wilmington's counsel, we order that the statutory award be modified to provide that it shall be applied toward the amount due Wilmington's attorneys under the contingent fee agreement, not in addition to the amount due under that agreement."); *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1189 (E.D. Cal. 2018) ("[T]he payment structure contemplated here is essentially a contingency bonus. This arrangement virtually assures that counsel will be over-compensated for their work.").

5

and delayed payment associated with contingency fee cases.[22] While this is a factor, it has much less weight in an FLSA case than it does in a civil rights case, which I have explained before.[23]

Finally, there appears to be no shortage of lawyers willing to take FLSA cases or evidence that they take away from the focus on other cases. In the past three years, over 375 FLSA cases have been filed in the Eastern District of Arkansas.

Based on a review of the submissions and my knowledge of the local prevailing rate, I find that the reasonable hourly rate is $250 an hour for Mr. Sanford and $175 an hour for Mr. Rauls. The law clerk can be billed at $25 an hour, since that appears to be the recent trend,[24] and the "staff" work will not be billed to opposing counsel.

**B.     Hours Expended**

Now, I must consider the reasonableness of the hours expended. Once again, I am tasked with reviewing billing records that include unreasonable hours and unnecessary oversight by the managing lawyer. Two months ago, I issued an opinion that I thought made quite clear that this practice must stop:

> SLF can disagree with whether overstaffing and micro-managing cases is a reasonable business practice, but defendants should not pay for the costly practice.

---

[22] Doc. No. 44-2.

[23] *Vines*, 2020 WL 3062384, at *4 ("Both types of cases are intended to vindicate rights protected by Congress, but the length of litigation is much longer in civil rights cases and the odds of success are much lower. Seasoned lawyers, such as in this case, should be able to quickly assess the merits of an FLSA claim and, typically, find resolution with the opposing counsel. The point is, although there is a risk, in FLSA cases, it is much smaller than other fee-shifting cases.").

[24] *Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) (reducing the hourly rate for law clerks to $25 an hour). *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *2 (W.D. Ark. Dec. 3, 2018) (holding that the "appropriate rate should be discounted to $25.00 per hour" for law clerks).

6

It appears to me that the only way to make the point that SLF will no longer be compensated for this inefficient practice is to impose a significant reduction in fees.[25]

Just last week, Judge Brooks of the Western District of Arkansas explained it this way: "The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."[26]

Again, no fee-paying client would tolerate these practices, but SLF continues, undeterred. I believe that all of the judges who have addressed SLF litigation practices have been clear,[27] but,

---

[25] *Vines*, 2020 WL 3062384, at *6.

[26] *Mya Hill-Smith v. Silver Dollar Cabaret, Inc., et al.*, No. 5:20-cv-5051; 2020 WL 4741917, at *3 (Aug. 14, 2020).

[27] *Vines*, 2020 WL 3062384, at *5 ("At least seven different judges have criticized SLF's repeated overstaffing of cases, and SLF has been on notice regarding this practice since at least 2012. Yet, eight years later, SLF unabashedly continues to run up fees through overstaffing and asks that defendants pay the bill."); *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018) ("Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys, *see id.*, it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate attorneys should have billed time to this rather uncomplicated wage-and-hour case."); *Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) ("Involving two lawyers also ran the bill up some with needless coordination."); *West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019) ("Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."); *Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016) ("[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."); *Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at n.2 (W.D. Ark. June 10, 2019) ("'These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away from time that could be spent protecting the client's legal interests."); *Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016) ("[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer.); *Jones v. RK Enterprises of Blytheville, Inc.*, No. 2016 WL 1091094, at *3 ("[T]here are numerous emails and telephone conferences between the two [lawyers] that unreasonably increased the hours spent on the case."); *Bryan*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) ("[S]ix lawyers and a law clerk" is

7

just in case, let me put it this way: <u>Mr. Sanford will not be paid for unnecessarily micro-managing associate attorneys in non-complex FLSA cases</u>. Mr. Sanford's own affidavit proves that his oversight practice is unnecessary and unreasonable. According to the affidavit, Mr. Rauls has been practicing nine years, and "his practice includes particular emphasis in employment law issues, especially the FLSA. Mr. Rauls has litigated numerous FLSA cases through settlement or trial."[28] Accordingly, none of the hours billed in this case by Mr. Sanford will be awarded.

As for Mr. Rauls's expended hours, there are a few issues:

**Inter-Office Correspondence and Conferences** – As I just mentioned, the repeated conferences between the two lawyers were unnecessary, so 0.2 hours by Mr. Rauls involving inter-office communications will be deducted (most of the inter-office correspondence hours were billed by Mr. Sanford – at his higher rate – but have already been deducted above).

**Unsuccessful Issues** – SLF seeks compensation for opposing Defendants' Motion for Extension of Time (1.2 hours) and opposing Defendants' Motion for Continuance (0.4 hours), but Plaintiff was not successful on either of these issues.

**Jury Trial** – As stated in the affidavit, Mr. Rauls's "practice includes particular emphasis in employment law issues, especially the FLSA." A seasoned FLSA lawyer should be familiar with the right to a jury trial in an FLSA case. Accordingly, he should not have billed 0.2 hours on July 22, 2020 regarding a jury trial in an FLSA case.

**Summary Judgment Motion** – SLF seeks $2,030.00 (nine billable hours) related to its motion for partial summary judgment. However, this motion was unnecessary and an

---

excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers.").

[28]Doc. No. 44-2.

8

experienced FLSA lawyer would know that. Essentially, the motion was a demand for the liability damages based on the discovery Defendants provided. An email with a reasonable demand to opposing counsel would have taken 0.2 hours, at most. Instead Plaintiff spent nine hours on this issue and wants to be compensated for the excessive work. The request is denied, since the only reason for filing the motion was to accumulate billable hours. If a trial was imminent and Defendants refused to negotiate settlement, this motion might have become necessary. However, that was not the posture in this case.

**Motion for Lawyers' Fees** – SLF asserts that the fees petition took 5.5 hours to draft. This is too much time considering that it was SLF's standard motion and affidavit. Accordingly, SLF will be awarded only two hours for this work.

**Complexity of the Case** – This case was not complex. A review of discovery revealed Defendants' potential exposure, and SLF could have quickly issued a reasonable settlement demand. This case would not have required SLF to turn away other work in order to adequately prosecute the case. This was a straightforward case that fell directly within the lawyers' specialty.

**Self-Audit** – As is evident from the above analysis, SLF made no effort in this case to audit it own records and remove redundant and unnecessary time. Instead, it left sorting it to me.

C. **Fees Demand**

Defendants made an offer of judgment on July 22, 2020, which Plaintiff accepted the next day.[29] That same day, SLF told opposing counsel that "we can put the fees to bed for $11k."[30] Defendants countered with $3,500 for fees and costs and SLF dropped its demand to

---

[29]Doc. No. 42.

[30]Doc. No. 46-1.

9

$9,900.[31] The problem is that SLF had performed just over $7,000 worth of work, and that amount included the higher billing rates and Mr. Sanford's hours of unnecessary oversight. Yet, once again, SLF demanded fees that were not earned and were not anticipated to be earned. This is unacceptable. As I have said before, "FLSA cases are not conduits for funneling unearned fees into lawyers' pockets."[32] Comment 4 to Rule 1.5 of the Arkansas Rule of Professional Conduct provides that a lawyer "is obliged to return any unearned portion" of a fee. With this in mind, it seems inappropriate for SLF to demand fees from the opposing party that it did not earn. I have repeatedly criticized this practice, but SLF remains undeterred. It may well be that the Eastern and Western District of Arkansas need a local rule requiring lawyers in fee shifting cases to turn over all billing records before making a fee demand.

Although I am required to award a fee,[33] the amount of the award is at my discretion.[34] Excluding the time spent on summary judgment and allowing only two hours for the fee petition results in 18.3 hours spent by Mr. Rauls on this case. After the other deductions are made, the total is 16.3 hours, which results in $2,852.50 (16.3 x $175 an hour). With the 4 hours billed by the law clerk (4 x $25 an hour), the total is $2,952.50.

---

[31]*Id.*

[32]*Vines*, 2020 WL 3062384, at *9.

[33]Some courts have found that there are exceptions to the mandatory fee. See *Sahyers v. Prugh, Holliday & Karatinos*, 560 F.3d 1241 (11th Cir. 2009) (finding no abuse of discretion by the district court in denying by denying lawyers' fees to a prevailing FLSA plaintiff); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying fees to a prevailing FLSA plaintiff because "[t]here are 'special circumstances' that can render such an award of attorney's fees unjust, and so-called nuisance settlements represent such a circumstance" ).

[34]*Fires v. Heber Springs Sch. Dist.*, 2014 WL 2441955 at *2 (8th Cir. June 2, 2014) (reviewing district court's decision to classify hours as excessive for abuse of discretion and "giving due deference to the district court's unique understanding of the legal and factual issues implicated by this matter and counsel's handling of them").

### D. Costs

SLF asserts that it incurred $400 in costs, which was the filing fee. Defendants do not object to this request.

## CONCLUSION

Based on the above reasons, Plaintiff's Motion to Approve Attorney Fees (Doc. No. 44) is GRANTED IN PART and DENIED IN PART. SLF is entitled to $2,952.50 in lawyers' fees and $400 in costs from Defendants.

IT IS SO ORDERED this 24th day of August, 2020.

<u>Billy Roy Wilson</u>
UNITED STATES DISTRICT JUDGE