IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ANTHONY VINES and DOMINIQUE LEWIS,                            PLAINTIFFS
Individually and on Behalf of All Others Similarly Situated

VS.                              4:18-CV-00509-BRW

WELSPUN PIPES, INC., *et al.*                                    DEFENDANT

## AMENDED ORDER IMPOSING RULE 11 SANCTIONS[1]

> While I understand the <u>reticence on your client's part regarding the attorneys' fees</u> . . . <u>they are getting a substantial discount on total liability + fees</u> (which is upwards of $450k) that they could face should this go to trial . . . .[2]
>
> – August 15, 2019 email from the Sanford Law Firm ("SLF")

This email exposes the unprofessional practices that took this case from being settled in August 2019 to becoming "a drawn-out litigation over attorney's fees" with "a course of attorney conduct . . . that is a stain on our system."[3]  Four years, two appeals, and many orders later, SLF continues to deny any accountability for the fact that agreement on the liability amount rested on a demand for lawyer's fees that it never earned nor intended to earn.  The only reason this extortion failed is because I "uncovered not only that [SLF] failed to negotiate the merits and attorney's fees separately, but that the conflict of interest tainted the entire settlement agreement."[4]

---

[1]Upon mature reflection, rather than total suspension in the EDAR, Mr. Sanford and SLF are suspended from practicing in any FLSA cases in the EDAR for a term of two years, as set out at the end of this order.  All other sanctions remain the same.

[2]*Vines v. Welspun Pipes, Inc.*, 453 F. Supp. 3d 1156, 1160 (E.D. Ark. 2020) (emphasis added); Doc. No. 82-1.

[3]*Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 858 (8th Cir. 2021) (Colloton, dissenting) (reversed on other grounds but affirmed after a second appeal. See *Vines v. Welspun Pipes Inc.*, No. 21-3537, 2023 WL 4247395, at *1 (8th Cir. June 29, 2023)).

[4]*Vines*, 9 F.4th at 859 (citing *Barbee v. Big River Steel*, LLC, 927 F.3d 1024, 1027 n.1 (8th Cir. 2019).

# I.     BACKGROUND

"There is ample persuasive authority deeming it improper, unreasonable and non-compensable for a plaintiff's attorney to delay or sabotage an achievable settlement for the purpose of ratcheting up attorney's fees."[5]  "It is all too frequently the case that the only obstacle standing in the way of a settlement between a plaintiff and a defendant is the plaintiff's lawyer and his unreasonable demand for fees . . . . Thus, the parties are held hostage and this Court is left feeling that it has become a party to an extortion."[6]  Such was the case here.

In a June 29, 2023 Order, I directed Mr. Josh Sanford to show cause why he, individually and as the managing partner of SLF, should not be found in violation of Rule 11.  Specifically, Mr. Sanford was to address how his settlement negotiations, fees demands for unearned fees, motion for fees to the Court, and meritless second appeal do not constitute: (1) presenting claims for an improper purpose; (2) causing unnecessary delay; (3) needlessly increasing the cost of litigation; (4) presenting frivolous arguments to support his claim; and (5) presenting arguments with no evidentiary support.[7]

# II.    DISCUSSION

## A.     Show Cause Hearing

On July 19, 2023, SLF and Mr. Sanford were given the opportunity to present evidence as to why their litigation practices in this case did not violate Rule 11.

First, with no supporting law, they re-raised the issues of laches and the statute of limitations.  Ironically, in an earlier filing, Respondents complained that I entered an order too

---

[5]*Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1272 (S.D. Ala. 2013).

[6]*Spegon v. Catholic Bishop of Chicago*, 989 F. Supp. 984, 987 (N.D. Ill. 1998), aff'd, 175 F.3d 544 (7th Cir. 1999).

[7]See FED. R. CIV. P. 11.

fast (they claimed it was entered thirteen minutes after a remand, but it actually was two

minutes).[8]  Now they complain that I took too long.  While the unprofessional practices in this

case have persisted for years, the Eighth Circuit's opinion affirming my fees ruling was issued

on June 29, 2023.[9]  The show-cause order was entered <u>six minutes</u> later.[10]  There was no undue

or prejudicial delay.

      Next, they questioned my outline, which simply recited Rule 11, as listed on the next

preceding page.  There should have been no surprise.

      Then, they called, as a witness, Defendant's former lawyer, who obviously was reluctant

to say much and only alluded to evidence already in the record.

      After that, Respondent attempted some hairsplitting by arguing that the show-cause order

was not clear as to whether Mr. Sanford, SLF, or both were on notice.  The order reads:

"Accordingly, SLF (through its managing partner Josh Sanford) is directed to show-cause at 2

p.m., on Wednesday, July 19, 2023, as to why it should not be held in contempt of court and

sanctioned under Federal Rule of Civil Procedure 11."[11]  Respondents focused on the word "it."

At most this is scrivener's error.  Additionally, Mr. Sanford, as managing partner of SLF, is

individually responsible.  Logically, if SLF were sanctioned, then Mr. Sanford, individually,

would be included.  As they say in law school, this is a "red herring."

      Finally, rather than present any additional evidence, SLF and Mr. Sanford feigned that

they had no idea why they were in Court.  To any interested reader– especially ones who have

---

[8]Doc. Nos. 102, 103, 107.

[9]Doc. Nos. 118, 119.

[10]Doc. No. 120.

[11]*Id.*

been embroiled in this case for years – the show-cause order clearly and succinctly puts  SLF

and Mr. Sanford on notice that they are being questioned about conducting their settlement

negotiations in a manner that violated *Barbee*, attempting to extort unearned fees from

Defendant, unnecessarily extending litigation to get those unearned fees, and repeatedly

submitted (in this case and others) fee requests for excessive hourly rates and inflated hours.

### B.    Rule 11

Rule 11 sanctions may be warranted when a pleading is "presented for any improper

purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of

litigation"; contains allegations or factual contentions that lack evidentiary support; or contains

denials of factual contentions that are not warranted on the evidence.[12]

In considering whether a violation has occurred, a court "must determine whether a

reasonable and competent attorney would believe in the merit of an argument."[13]

Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for

insisting upon a position after it is no longer tenable . . . ."[14]

### C.    Simultaneous Negotiations in this Case

I denied a third motion to approve settlement after it became apparent that liability

damages and lawyers' fees were not negotiated separately.[15]  Contrary to the record, SLF insisted

that I "reached conclusions that do not comport with the reality of the negotiation process."[16]

---

[12]*Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006).

[13]*Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).

[14]Fed. R. Civ. P. 11, 1993 fee requesty notes.

[15]Doc. No. 83. A more detailed summary and analysis is found in this order.

[16]Doc. No. 84.

Based on the record, Defendant provided SLF with a payroll summary and damages calculation.  In a June 25, 2019 email, sent five days after the *Barbee* decision was issued, SLF demanded the following: "Our present demand is for $450,000.00.  This total is comprised of $211,666.36 in compensatory damages, an equal amount in liquidated damages, and attorneys' fees and costs."[17]  Defendants' counteroffer was $126,000.[18]  Clearly, the parties were not separately negotiating damages and lawyers' fees, despite the claim above.  To excuse this practice, SLF noted that "the Court is correct in pointing out that the *Barbee* decision came down five days prior to that demand, [but SLF] had not yet incorporated the *Barbee* decision into its negotiation practice." Doc. No. 84.  This despite SLF having been the plaintiff's counsel in *Barbee.*

Eventually, the parties started listing liability and fees as separate line-items, but liability had not been finalized, so this did not resolve the problem.  The smoking gun is an August 15, 2019 email SLF sent to Defendant:

> While I understand the reticence on your client's part regarding the attorneys' fees number . . . they are getting a substantial discount on total liability + fees (which is upwards of $450k) that they could face should this go to trial . . . .[19]

Because liability damages and lawyers' fees were negotiated simultaneously, SLF could invoke the threat of additional fees "should this go to trial" to pressure Defendant to pay lawyers' fees that are unreasonable, unearned, and unlikely to ever be earned.[20]  The parties agreed to

---

[17]Doc. No. 82-1.

[18]*Id.*

[19]*Vines*, 453 F. Supp. 3d at 1160; Doc. No. 82-1.

[20]In fact, SLF's own billing records, and their typically inflated rates and excessive hours, revealed that the total lawyers' fees, as of March 27, 2020, was only $47,502.66.  To explain the nearly $50,000 difference in what they convinced Defendant to pay, as opposed to the work it actually had done, SLF advised that it "anticipates substantial additional billing during the

liability damages quickly, but SLF continued to demand more for fees.  Based on the record, SLF

pressured Defendant to pay a premium on lawyers' fees because, if it did not, SLF would reject the

liability damages offer, proceed to trial, and eventually demand even more fees.  Yet, SLF

relentlessly (and erroneously) fought the notion that fees and liability were negotiated

simultaneously.  No fewer than five times, SLF advised me that fees and liability were negotiated

separately.[21]  It proceeded with this preposterous argument before the Eighth Circuit, and it was

rejected out-of-hand.[22]

　　　　During this back-and-forth regarding simultaneous negotiations, I advised SLF that

"regardless of how this issue is resolved, Defendant will not pay for the fees [SLF] is accumulating

while continuing to litigate this specific issue."[23]  Undeterred, SLF submitted those hours with a

---

course of administering the final settlement payouts." (Doc. No. 81). However, "substantial
additional billing", if reasonable, certainly would not be double the billing that had been
performed as of that date.  Digging in even more, SLF excused its behavior by claiming: "Had
the Parties taken this to trial and Plaintiffs prevailed . . . Plaintiffs would have generated a
potential fee of at least, $110,000 and likely more." Doc. No. 81.

　　[21]Doc. No. 79 ("Attorneys' fees in this case were negotiated entirely separately from any
negotiation of Plaintiffs' and opt-in Plaintiffs' settlement amount, and had no effect on the
amount that Plaintiffs' received . . . .") (emphasis in original); Doc. No. 81 ("Settlement of fees
separately from the class damages at a fixed amount was an important part of the settlement for
both sides, though to be clear, at no point did Plaintiffs' damages factor into the negotiation of
fees."); Doc. No. 84 ("[T]he Parties implemented the *Barbee* rule, namely that when the parties
negotiate fees separately from Plaintiffs' recovery . . . .); Doc. No. 87 ("The labeling of this fee
agreement between the Parties as 'separately negotiated' is not merely lip service; the
negotiations and documentation of such negotiations show that the Parties agreed to liability
damages then continued to separately negotiate attorneys' fees and costs."); Doc. No. 93 ("[T]he
Parties  separately negotiated the class damages and the attorneys' fees and costs payment . . .
.").

　　[22]*Vines*, 9 F.4th 855 ("We conclude that the district court did not clearly err when it
denied the parties' joint motion for approval of the settlement based on its conclusion that the
FLSA claims and the attorneys' fees were not separately negotiated. The record before the
district court supported that conclusion.").

　　[23]Doc. No. 88.  I also directed the parties to start settlement negotiations anew and to not
discuss fees until they settled the liability damages.  The parties reached an agreement regarding

fee petition it filed on June 8, 2020,[24] a continuation of the practices discussed in detail below.

### D.    Pattern of Abuse

SLF's (and particularly Mr. Sanford's) obduracy related to its unprofessional practices has persisted despite repeated admonishments in this case as well as numerous other cases.

### 1.    Hourly Rates

In this case, SLF leveraged the fee-shifting statute to unnecessarily extend the litigation and  coerce Defendant to pay excessive, unearned fees.  When that did not work, SLF continued its incessant practice of submitting a fee petition to the court requesting unreasonable hourly rates, excessive time, and non-compensable tasks. According to Mr. Sanford's affidavit (in this case and others), the rates are consistent with lawyers in the area who work on similar cases.  However, this assertion has been rejected countless times over the years.[25]

---

liability (which I approved) but not fees.  See Doc. Nos. 89, 90.

[24]Doc. No. 92.

[25]*Burton v. Nilkanth Pizza Inc., et al*, No. 4:19-CV-00307-BRW, Doc. No. 48 (E.D. Ark. Aug. 24, 2020) (citing cases); *Smith v. OM Purshantam, LLC, et al.*, No. 4:18-CV-00797-KGB, 2021 WL 1239468, at *3 (E.D. Ark. March 31, 2021) ("Second, defendants claim that Ms. Smith has proposed hourly rates that are excessive and unjustified. The Court agrees. Mr. Sanford's request for $325.00 per hour has repeatedly been rejected by judges in both the Eastern and Western Districts of Arkansas."); *Billy Ghess v. Balel Kaid, et al.*, No. 2:19-CV-00021 KGB, 2021 WL 3891561, at *4 (E.D. Ark. Aug. 31, 2021) ("As in *Smith* and *Vines*, the Court concludes that the claimed rates of Mr. Sanford, Mr. Rauls, and Ms. Kinney are unreasonably high."); *Aubrey v. Zaman, LLC.*, No. 4:17-CV-00446-JLH (E.D. Ark. Nov. 29, 2018) (granting $275/hr rather than the requested $325/hr); *Wolfe v. Arafa*, No. 5:17-CV-00245-DPM (E.D. Ark. Aug. 8. 2019) (same); *Franklin v. Magnolia Flooring Mill, LLC*, No. 1:17-CV-01073, 2019 WL 2427952, at *4 (W.D. Ark. June 10, 2019) (holding that an hourly rate of $325 for Mr. Sanford was too high); *Perez v. Mian Enterprises, Inc*., No. 2:17-CV-02162, 2018 WL 10394810, at *2 (W.D. Ark. Oct. 26, 2018) (allowing $275/hr rather than the requested $325/hr); *Clark v. Pollo, LLC*, No. 4:20-CV-01100-LPR, 2023 WL 2692425, at *3 (E.D. Ark. Mar. 29, 2023) ("The hourly attorney rates requested by SLF in this case exceed the prevailing market rates. Judges in the Eastern and Western Districts of Arkansas routinely reject as unreasonable hourly rates of $300+ for Mr. Sanford and $200+ for more junior attorneys."); *Guyton v. JIABAO, Inc*., No. 6:21-CV-06165, 2022 WL 18539830, at *2 (W.D. Ark. Dec. 16, 2022) ("While the Sanford Law Firm has requested varying hourly rates for the multiple timekeepers who assisted on Plaintiff's

2.      **Time Submissions**

The same holds true for SLF's repeatedly rejected time requests:

| Judge Baker (EDAR) in 2019 | Noting that "Ms. Smith's counsel assigned 14 individuals to work on this case at various times and billed for 11 of them, including 7 lawyers . . . . This may have led to inefficiencies and duplication of work. Ms. Smith's counsel has been repeatedly warned about this type of duplicative billing in the past." Ultimately Judge Baker reduced hours for "Case Management" and "In-House Conference" by 75%.[26] |
|---|---|
| Judge Bemporad (WDTX) in 2019 | Judge Bemporad (WDTX) "In addition to duplication of work, having fifteen time keepers on a single case resulted in many charges for intraoffice conferences to discuss various assignments. Plaintiffs' counsel has been warned about this type of duplicative billing in the past."[27] |
| Judge Brooks (WDAR) in 2018 and 2020: | "Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys . . . it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate attorneys should have billed time to this rather uncomplicated wage-and-hour case."[28]<br><br>"The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."[29] |

---

matter, the Court chooses to follow the precedent of judges in both the Western and Eastern districts."); *Gutierrez v. 1873 Club of Texarkana*, No. 4:20-CV-4108, 2022 WL 2911691, at *2 (W.D. Ark. July 22, 2022) (holding that "all but one of Plaintiff's asserted rates exceed the prevailing market rate in Texarkana, Arkansas.").

[26]*Smith*, 2021 WL 1239468, at *3.

[27]*Furlow v. Bullzeye Oilfield Servs.*, LLC, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *7 (W.D. Tex. Jan. 3, 2019), report and recommendation adopted, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019).

[28]*Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018).

[29]*Hill-Smith v. Silver Dollar Cabaret, Inc., et al.*, No. 5:20-CV-5051; 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020).

| Judge Chestney (WDTX) in 2019 | "Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."[30] |
|---|---|
| Judge Comstock (WDAR) in 2021 and 2022 | Examination of emails and excessive inter-office communications are "precisely the kind of inefficient, duplicative, and unnecessary billing practices which have earned SLF continuing criticism from the multiple Arkansas federal courts reviewing their fee petitions."[31]<br><br>"[L]awyers are not entitled to grace or extra credit for exercising professional ethics. The 'voluntarily reduced' time entries should have never been included in the first place, and whomever was charged with reducing entries identified far too few. Under these circumstances, arguing that SLF's 'voluntary reductions' should preclude this Court's required examination of SLF's requested hourly rates is absurd."[32]<br><br>"[T]here yet remains too much conferencing and duplication, ostensibly caused by employing eight lawyers and a paralegal to work on a single litigant's FLSA matter . . . [that was] neither novel nor complex. Staffing remains the choice of the law firm; however, this Court consistently declines to shift the costs of inherent inefficiencies to Defendants."[33] |
| Judge Harris (EDAR) in 2022 | "SLF's expertise, evidenced by the over 1,100 wage lawsuits filed and prosecuted in Arkansas and Texas since 2015, should express itself in economies of scale and in efficiencies in drafting pleadings and discovery. The records do not reflect such efficiencies."[34] |

---

[30]*West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019).

[31]*Rorie v. WSP2, LLC*, No. CV 20-5106, 2021 WL 4900992, at *2 (W.D. Ark. Oct. 20, 2021)

[32]*Id. at 3.*

[33]*Folta v. Norfolk Brewing Co.*, No. CV 21-3038, 2022 WL 16984515, at *2 (W.D. Ark. Nov. 16, 2022)

[34]*Wells v. Sevens Star Hotels Group, Inc., et al.*, No. 4:18-CV-00828-PSH (E.D. Ark.), Doc. No. 38.

| Judge Hickey (WDAR) in 2016 and 2022 | "[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."[35]<br><br>"Nothing stops Mr. Sanford from personally overseeing the work done by a specialist attorney at his firm, but Defendants do not have to pay for it."[36] |
|---|---|
| Judge Holmes (WDAR) in 2016 and 2019 | "[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer.[37]<br><br>"These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away from time that could be spent protecting the client's legal interests."[38] |
| Chief Judge Marshall (EDAR) in 2012 and 2020 | "Involving two lawyers also ran the bill up some with needless coordination."[39]<br><br>"[S]ix lawyers and a law clerk" is excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers."[40] |
| Judge Miller (EDAR) in 2020 | "SLF's billing spreadsheet shows that eleven different lawyers, as well as five support staff members, worked on this fairly routine case . . . . SLF may consider it prudent to tightly manage its associates, but defendants will not be forced to bear the costs of that approach."[41] |

---

[35]*Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016).

[36]*Gutierrez*, No. 4:20-CV-4108, 2022 WL 2911691, at *3.

[37] *Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016).

[38]*Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at n.2 (W.D. Ark. June 10, 2019).

[39]*Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012).

[40]*Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020).

[41]*Dean v. Bradford Estates*, No. 4:19-CV-00748-BSM, 2020 WL 8642227, *2 (Nov. 24, 2020).

| Judge Moody (EDAR) in 2020 | "The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc. The Court will not hold Defendants responsible for these billing practices."[42] |
|---|---|
| Judge Rudofsky (EDAR) in 2022 | "[T]he Court concludes that nearly all of the more than 160 entries related to 'In-House Communication' are not compensable. . . [and] the vast majority of the entries appear to be a consequence of overstaffing the case, which resulted in unnecessarily frequent correspondence between attorneys about routine matters and case minutiae."[43] |
| Judge Steele (SDAL) in 2022 | SLF "assume[s] both that every hour spent was reasonably expended and that their proposed hourly rates are reasonable. The Court disagrees with both assumptions."[44] |

This list spans eleven years – 2012 to 2022 – and is certainly not a complete list. In fact, I did not even include the numerous orders I have entered addressing similar problems.

Even the Eighth Circuit repeatedly has advised SLF that "[w]hen a party submits a fee petition, it is not the opening bid in the quest for an award.[45] Rather, it is the duty of the requesting party to make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary." SLF's unprofessional practices are systemic and obstinate. The Eighth Circuit recognized the following regarding SLF's practices:

- The [FLSA] requires courts to "allow a reasonable attorney's fee to be paid by the defendant" for successful claims" and SLF "has routinely abused this provision."[46]

---

[42] *Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-CV-00471-JM, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020).

[43] *Wolfe v. Affordable Rooter Serv.*, LLC, No. 4:20-CV-00156-LPR, 2022 WL 2352364, at *5 (E.D. Ark. Mar. 30, 2022)

[44] *Troxel v. Gunite Pros*, LLC, No. CV 21-0057-WS-N, 2022 WL 17416492, at *2 (S.D. Ala. Dec. 5, 2022).

[45] *Oden v. Shane Smith Enterprises, Inc.*, 27 F.4th 631, 634 (8th Cir. 2022) (quoting *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018)).

[46] *Oden*, 27 F.4th at 632.

- "SLF's negotiating tactics were more akin to a shakedown than a good faith effort to determine a reasonable fee."[47]

- "SLF engaged in negotiating tactics that unreasonably extended the litigation, wasting the court's time and resources."[48]

- "Essentially, SLF takes low-stakes FLSA cases, overstaffs them, and asks Defendants to pay for its inefficiencies. SLF's representation [here] followed that trend."[49]

- "SLF also demanded $6,000 in attorneys' fees, despite having performed 'less than $1,500 in work at the time it made the demand.' When pressed on this discrepancy, SLF said that 'in reality that is just how negotiations work; all adults know this.' We disagree."[50]

- "SLF continues to submit excessive fee requests despite warnings from several courts."[51]

- "We do not fault the district court for trying to discourage excessive fee requests by penalizing those who repeatedly make them."[52]

- "The district court . . . provided ample justification for reducing the lodestar based on SLF's unprofessional conduct."[53]

And so it continues. Apparently undeterred just two months ago, SLF filed a motion for approval of settlement in *Jackson v. Prairie County, Arkansas.*[54] Records in that case reveal that SLF demanded $8,000 for fees on March 17, 2023. Yet, the day SLF made that

---

[47]*Id. at* 634.

[48]*Id.*

[49]*Id. at* 632.

[50]*Id.*

[51]*Skender v. Eden Isle Corp.*, 33 F.4th 515, 523 (8th Cir. 2022).

[52]*Id.*

[53]*Vines*, 2023 WL 4247395, at *1 (8th Cir. June 29, 2023).

[54]No. 4:22-CV-0093-JM (E.D. Ark.).

demand it had accumulated just over $6,600 in fees, and this amount is at SLF's oft-rejected, inflated rates and hours.[55]

E.      **Rule 11 Violations**

Based on the arguments in this hearing and in the entire case, I find that:

1.   SLF and Mr. Sanford knowingly and intentionally attempted to settle liability and fees together, contrary to the instructions from the Court of Appeals for the Eighth Circuit in *Barbee v. Big River Steel, LLC*, a case it was familiar with, having been the plaintiff's lawyer in that case.

2.   SLF and Mr. Sanford knowingly and intentionally used simultaneous negotiations of fees and liability for the improper purpose of exacting unearned fees from Defendant, resulting in needless delay and increasing the cost of litigation.  I note that Judge Colloton recognized this after the first appeal. I'll quote him:

> During negotiations, [SLF] attempted to persuade [Defendant] to agree to an exorbitant amount of attorney's fees[56] by emphasizing that the settlement was a "substantial discount" on total liability and fees, and that [Defendant] was getting a "pretty sweet deal" on some of the plaintiffs' claims.[57]

3.   SLF and Mr. Sanford knowingly and repeatedly misled the Court, claiming that liability and fees were negotiated separately.  After I discovered that this was not true, SLF and Mr. Sanford continued to argue, contrary to the record, that they did no such thing. Additionally, they have continued to litigate this issue knowing that it was meritless. The argument was rejected first by me and then by the Eighth Circuit.

---

[55]Doc. No. 18-4.

[57]*Vines*, 9 F.4th at 859.

4.  As they attempted to do in this case, SLF and Mr. Sanford have systematically engaged in a practice of coercing defendants into paying fees that are unearned, unlikely to be earned, unreasonable, and unsupported by their own records.

5.  In this case and others, SLF and Mr. Sanford have repeatedly and knowingly filed fee petitions that request excessive rates and include exaggerated time entries. Despite repeated rulings by me chastising this practice, as well as over a dozen other judges, the pattern has persisted.  Respondents know that their fees submissions, in this case and others, are unsupported by existing law and lack evidentiary support.

6.  After the first appeal, SLF filed a motion to alter judgment and supplemental motion for fees and costs, claiming that it was successful on appeal.[58] Any reasonable lawyer would know that this claim was not true. Yet, Defendant was again forced to spend time and money on a frivolous claim.  This argument also was rejected by the Eighth Circuit following a second appeal, which also unnecessarily extended litigation and costs.

7.  Following the first remand, SLF filed a motion to recuse based on unsubstantiated allegations that I, or someone at my direction, sent an "anonymous letter" along with a publicly available fees order to numerous Arkansas judges.[59]  The request was denied.[60]  Although Respondents did not appeal that ruling in this case, it filed a nearly identical motion in another case.  In rejecting that motion, the Eighth Circuit noted that "[t]he only evidence SLF provides to

---

[58]Doc. No. 107.

[59]Doc. No. 105.

[60]See *Vines v. Welspun Pipes, Inc*., No. 4:18-CV-00509-BRW, 2021 WL 4768574 (E.D. Ark. Oct. 12, 2021) (denying motion to recuse).

support this claim is . . . Josh Sanford's unsupported and self-serving affidavit . . . ." Again, Respondent's practice of pursuing arguments with no evidentiary support has been unwavering.[61]

###  F.   Appropriate Sanctions

I considered directing Respondents to pay the amount of money it attempted to extort from Defendant.  However, I do not believe that a monetary sanction in this case would provide sufficient deterrence to Mr. Sanford, SLF, or litigants in other cases.  If Respondents continue to collect unearned fees, it is unlikely to be deterred by some nominal monetary sanction; rather, it would just be the cost of doing business.

Among other things, the Advisory Committee Notes to Rule 11 provide the following criteria for determining whether and what kind of sanction is appropriate: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether the person has engaged in similar conduct in other litigations; (4) whether the conduct was intended to injure; (5) the effect the conduct had on the litigation process in time or expense; and (6) what is needed to deter similar activity by the offending party and other litigants.[62]  Using these considerations as a guide, I have determined that the appropriate sanction for Respondents' pattern of willful conduct is suspension.

In a pleading and at the hearing, Respondents pointed out that if civil contempt is at issue, they should have an opportunity to "purge itself of contempt."[63]  As detailed in pages four through ten, no fewer than <u>fourteen</u> judges, in dozens of cases, and the Eighth Circuit, in two cases, have scrutinized and chastised SLF's billing practices.  Despite these repeated shots across the bow,

---

[61]*Oden*, 27 F.4th at 633.

[62]FED. R. CIV. P. 11 (1993 Advisory Committee notes).

[63]Doc. No. 122.

SLF's obstinance has persisted. Nothing has changed. Using the word "contempt" for a lawyer's or law firm's actions is not done lightly. However, attempts at less direct scoldings and sanctions have been ignored. SLF and Mr. Sanford have refused to comply.

I also did not consider lightly whether the entire firm should be suspended. However, as this order reflects in the citations above, Mr. Sanford micro-manages all of his associates, no matter how seasoned. His hands are in every case. His signature appears on nearly every filing. He is copied on emails during negotiations. In fact, he admits as much:

> What I mean by this is that because of the management style at the Sanford Law Firm, lesser-experienced attorneys are able to independently manage their own cases with the oversight of more experienced attorneys and supported by a firm culture of collaboration and accessibility to all Sanford Law Firm attorneys.[64]

Based on the record in this case,[65] and in dozens of others, most of that "oversight" (or, as Chief Judge Marshall put it: "over-the-shoulder lawyering") is performed by Mr. Sanford.[66] That leaves no reliable way to suspend Mr. Sanford without suspending the firm.

I am convinced beyond peradventure that Mr. Sanford and SLF's practices are a pattern of willful activity present in nearly every case they file, resulting in unnecessary time and expense by the opposing parties and the Court. Without these sanctions, it is obvious that Respondents will not change their behavior. I am hopeful that the below sanctions will allow Respondents time to amend their practices in the future.

---

[64]Doc. No. 92-4.

[65]Doc. Nos. 92-1, 92-2,

[66]*Carden v. Logan Centers, Inc.*, No. 3:19-CV-167-DPM, 2022 WL 4537871, at *1 (E.D. Ark. Sept. 28, 2022).

**CONCLUSION**

Repeatedly demanding unearned fees, needlessly drawing out this litigation, and others, with meritless arguments, and continuing to request excessive fees is objectively unreasonable conduct.  This in addition to holding up settlement in hopes for more fees and repeatedly denying that it ever happened, despite evidence to the contrary.  Accordingly, I find Mr. Sanford to be in violation of Rule 11 and impose the following sanctions:

      1.   Mr. Josh Sanford and his firm are suspended from practicing in any FLSA cases in federal court in the Eastern District of Arkansas for a term of two years.[67]  After two years, Respondents may submit a request to lift the suspension and provide supporting documentation regarding how Mr. Sanford and SLF's practices have changed.

      2.   While Mr. Sanford and SLF are suspended in the EDAR, they must provide to every other jurisdiction where they practice copies of the June 29, 2023 show-cause order and this order.  More specifically, they must be filed in every pending case and any future cases.

      3.   Any attempt to circumvent this suspension by, for example, associating other lawyers, will be closely examined and Mr. Sanford is directed to advise any lawyers he associates of this fact.

      IT IS SO ORDERED this 21st day of July, 2023.

                           Billy Roy Wilson
                           UNITED STATES DISTRICT JUDGE

---

[67]"Courts have long recognized their authority to suspend or disbar attorneys, an inherent power derived from the attorney's role as an officer of the court that granted admission." *In re Hoare*, 155 F.3d 937, 940 (8th Cir. 1998) (citing *In re Snyder*, 472 U.S. 634, 643 (1985)).