# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2682

_____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Jun 28, 2024
Tammy H. Downs, Clerk
By: ForrestDunn D.C.
DEP CLERK

In re: Sanford Law Firm; Josh Sanford

4:18-cv-00509-BRW

*Appellant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: November 2, 2023
Filed: June 28, 2024

_____

Before SMITH, Chief Judge,[1] COLLOTON[2] and BENTON, Circuit Judges.

_____

SMITH, Chief Judge.

Sanford Law Firm (SLF) and Josh Sanford (Sanford) appeal from the district court's order suspending them from participating in any Fair Labor Standards Act (FLSA) case in the Eastern District of Arkansas (EDAR) for two years and requiring them to provide other jurisdictions in which they practice a copy of the district court's

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

adverse orders as sanctions for violating Federal Rule of Civil Procedure 11. We conclude that the district court neither gave proper notice of a specific pleading detailing the objectionable conduct nor gave clear notice as to the form of the sanctions it was considering. As a result, we reverse the district court's order sanctioning SLF and Sanford.

## I. *Background*
### A. *FLSA Litigation*

The court's sanctioning of SLF and Sanford arises from SLF's representation of plaintiffs in an FLSA action against Welspun Pipes, Inc., Welspun Tubular, LLC, and Welspun USA, Inc. (collectively, "Welspun").[3] The parties negotiated a settlement and sought the district court's approval. The settlement awarded $211,666.36 to one opt-in class, awarded $57,673.24 to another opt-in class, and set SLF's attorneys' fees and costs at $96,000. The district court denied the parties' joint motion to approve the settlement because the parties failed to negotiate the plaintiffs' wage claim separately from the award of attorneys' fees, as required by *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).

The parties then negotiated and sought approval for a new settlement that included amounts only for the wage claim, not an award of attorneys' fees. The district court approved the settlement. The plaintiffs thereafter moved for an award of attorneys' fees, requesting that SLF be awarded $96,000. The district court granted the motion for attorneys' fees; however, it awarded only $1.00 because of SLF's billing practices. The district court was "troubl[ed] . . . that SLF continue[d] the practice[s] after repeatedly being called out for [them]" and determined that the court

---

[3]For a full recitation of the underlying facts, see our prior opinions, *Vines v. Welspun Pipes Inc. (Vines I)*, 9 F.4th 849, 857 (8th Cir. 2021), and *Vines v. Welspun Pipes Inc. (Vines II)*, No. 21-3537, 2023 WL 4247395, at *1 (8th Cir. June 29, 2023) (unpublished per curiam).

"must be an auditor because SLF ignore[d] the warnings that ha[d] been given repeatedly." *Vines v. Welspun Pipes, Inc*., No. 4:18-cv-00509-BRW, 2020 WL 3062384, at \*4 (E.D. Ark. June 9, 2020), *vacated and remanded*, 9 F.4th 849 (8th Cir. 2021). The court cited a plethora of cases criticizing SLF for overstaffing cases, micro-managing associates, billing to read a motion filed by co-counsel, seeking reimbursement at lawyers' rates for secretarial work, and spending too many hours reviewing consent forms. *Id.* at \*4–7.[4] The court also criticized SLF for double billing,[5] unclear billing, holding unnecessary telephone conferences with clients,

---

[4]The district court cited the following: *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-cv-1156-DAE, 2019 WL 1313470, at \*7 (W.D. Tex. Jan. 3, 2019), *report and recommendation adopted*, No. 5:15-cv-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019); *Pierce v. Big River Steel LLC*, No. 3:17-cv-63-DPM, 2017 WL 5709905, at \*2 (E.D. Ark. Nov. 13, 2017), *vacated in part sub nom. Barbee*, 927 F.3d 1024; *Davis v. Klenk*, No. 3:12-cv-115-DPM, 2012 WL 5818158, at \*2 (E.D. Ark. Nov. 15, 2012); *Burchell v. Green Cab Co.*, No. 5:15-cv-05076, 2016 WL 894825, at \*3 (W.D. Ark. Mar. 8, 2016); *West v. Zedric's LLC*, No. SA-19-cv-00556-FB, 2019 WL 6522828, at \*6 (W.D. Tex. Dec. 3, 2019), *report and recommendation adopted sub nom. ACE W. v. Zedric's LLC*, No. SA-19-cv-00556-FB, 2019 WL 12393458 (W.D. Tex. Dec. 27, 2019); *Hays v. French Quarter Partners, LLC*, No. 6:15-cv-6065, 2016 WL 6518637, at \*3 (W.D. Ark. Nov. 1, 2016); *Cook v. Beemac Foods, LLC*, No. 2:18-cv-02155, 2019 WL 2418753, at \*2 (W.D. Ark. June 10, 2019); *Murdock v. McNair*, No. 5:17-cv-05225, 2018 WL 6314569, at \*1 (W.D. Ark. Dec. 3, 2018); *Coates v. Dassault Falcon Jet Corp.*, No. 4:17-cv-00372-JLH, 2019 WL 2931296, at \*2 (E.D. Ark. May 8, 2019); *Jones v. RK Enters. of Blytheville, Inc.*, No. 3:13-cv-00252-BRW, 2016 WL 1091094, at \*6 (E.D. Ark. Mar. 21, 2016), *aff'd*, 672 F. App'x 613 (8th Cir. 2016) (unpublished per curiam); *Bryan v. Miss. Cnty.*, No. 3:18-cv-130-DPM, 2020 WL 9048650 (E.D. Ark. May 12, 2020); *Beauford v. ActionLink, LLC*, No. 4:12-cv-00139-JLH, 2014 WL 183904, \*4 (E.D. Ark. Jan. 15, 2014).

[5]In support, the district court cited *Burchell*, 2016 WL 894825, at \*3 (holding that "[p]laintiff's counsel engaged in duplicative billing—that multiple attorneys billed for performing the same task or that the same task was itemized more than

overbilling on a straightforward case, seeking reimbursement for its continued litigation of its disagreement with the district court's prior finding, failing to conduct a self-audit, and rejecting a substantial settlement offer. *Id.* at *7–8. And the court determined that SLF "attempted [to] extort[] . . . $96,000 in unearned fees by negotiating contrary to *Barbee*." *Id.* at *10.

On appeal, we "vacate[d] the award of attorneys' fees" "[b]ecause the record contain[ed] no lodestar calculation." *Vines I*, 9 F.4th at 857. In doing so, we expressly "note[d] that '[i]t is well within the district court's broad discretion . . . to consider . . . the party's unprofessional conduct in the case'" "after the district court calculates the lodestar and has moved on to reducing that number." *Id.* (second, third, and fourth alterations in original) (quoting *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) (contractual fee award)). We also declined to reassign the case to a different district judge on remand. *Id.*

"On remand, the district court proceeded exactly as we directed: First, it calculated a lodestar of $14,056.50. Second, it reduced the attorneys' fee award to $500.00 'based on SLF's egregious conduct.'" *Vines II*, 2023 WL 4247395, at *1 (quoting *Vines v. Welspun Pipes, Inc.*, No. 4:18-cv-00509-BRWS, 2021 WL 11583464, at *12 (E.D. Ark. Sept. 8, 2021)). Specifically, the court concluded that the hours that SLF expended on the litigation were unreasonable based on its billing practices and again cited prior courts' rulings criticizing those practices. *Vines*, 2021 WL 11583464, at *6.[6] After reducing the hours based on SLF's billing practices, the

---

once").

[6]The district court cited the following cases: *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-cv-5051, 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020); *Murdock*, 2018 WL 6314569, at *1; *Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-cv-471, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020); *Davis*, 2012 WL 5818158, at *2; *Bryan*, 2020 WL 9048650; *West*, 2019 WL 6522828, at *6;

-4-

court further reduced the award based on SLF's rejection of "a substantial settlement offer," *id.* at *12; an "[u]nearned fee demand[]," *id.* at 13; and "deterrence for [SLF's] unprofessional conduct," *id.* at *14 (internal quotation marks omitted). The district court subsequently denied the plaintiffs' motion to amend the judgment under Federal Rule of Civil Procedure 59(e) and for leave to file a supplemental petition for costs and fees, rejecting the plaintiffs' argument that they were a prevailing party in the *Vines I* appeal.

The plaintiffs again appealed. They argued that the district court

(1) awarded a fee amount that was not based in the lodestar calculation; (2) used the FLSA's statutory fee award as a vehicle for sanctions; (3) failed to provide them with notice and an opportunity to respond prior to entering sanctions; and (4) found that they were not prevailing parties and refused to award any fees related to the appeal.

*Vines II*, 2023 WL 4247395, at *1 (cleaned up). We affirmed, holding that the district court did not abuse its discretion in awarding $500.00 in attorneys' fees. *Id.* We concluded that "[t]he district court complied to the letter with our directive on how to calculate an award of attorneys' fees and provided ample justification for reducing the lodestar based on SLF's unprofessional conduct." *Id.* We further concluded that the plaintiffs were not prevailing parties in *Vines I. Id.* at *2.

B. *Show-Cause Order and Hearing*

---

*Hays*, 2016 WL 6518637, at *3; *Cook*, 2019 WL 2418753, at *2 n.2; *Burchell*, 2016 WL 894825, at *3; *Dean v. Bradford Ests.*, No. 4:19-cv-00748-BSM, 2020 WL 8642227, *2 (E.D. Ark. Nov. 24, 2020); *Smith v. Om Purshantam, LLC*, No. 4:18-cv-00797-KGB, 2021 WL 1230468, at *3 (E.D. Ark. Mar. 31, 2021); *Furlow*, 2019 WL 1313470, at *7; *White v. Gregory Kistler Treatment Ctr., Inc.*, No. 2:16-cv-02259, 2018 WL 3186976, at *4 (W.D. Ark. June 28, 2018).

The same day that we decided *Vines II*, the district court ordered

> SLF (through its managing partner Josh Sanford) . . . to show-cause . . .
> as to why it should not be *held in contempt of court and sanctioned*
> under Federal Rule of Civil Procedure 11. More specifically, Rules
> 11(b)(1) and (b)(2), which relate to "needlessly increas[ing] the cost of
> litigation" and certifying that "legal contentions are warranted by
> existing law."

R. Doc. 120, at 4 (third alteration in original) (emphasis added). In the show-cause
order, the district court summarized the settlement negotiations and fee demands that
SLF made in *Vines*. It also observed that SLF's billing practices were "not an isolated
incident" and that "[e]very judge in the Eastern and Western Districts of Arkansas has
been burdened with SLF's inappropriate and unethical billing and settlement
negotiations." *Id.* at 3. According to the court, "Despite being reprimanded quite
directly, SLF continues to demand and collect fees that were never earned or expected
to be earned at rates that are arbitrary and contrary to those customarily charged in the
locality." *Id.* at 4 (citing Ark. Rules of Pro. Conduct 1.5(a) and 1.5(a)(3)).

Prior to a hearing on the show-cause order, SLF filed a motion for a bill of
particulars. In the motion, SLF argued that the district court's show-cause order was
"inadequate to advise SLF what [it] is *alleged to have done* and what *jeopardy it
faces* under the order." R. Doc. 122, at 1 (emphases added). SLF requested that the
district court enter an

> order informing it whether (i) the allegation is of criminal or civil
> contempt; (ii) that if criminal contempt, what are the essential facts
> constituting the charged criminal contempt; (iv) if criminal contempt,
> what is the disobedience or resistance SLF made; (v) if criminal
> contempt, what is the lawful writ, process, order, rule, decree, or
> command was disobeyed or resisted; (vii) if criminal contempt, what is

-6-

the penalty range; (viii) if criminal contempt, who is prosecuting the matter; (ix) if civil contempt, what court order SLF is accused of violating; (x) if civil contempt, what the SLF can do to purge itself of contempt; (xi) regarding Rule 11, what pleadings or advocacy by SLF needlessly increased the cost of litigation; (xii) regarding Rule 11, what certifications by it violated the warranted-by-existing-law requirement; and (xiii) regarding Rule 11, any allegation of fact or law which came to the Court's attention subsequent to the consideration of either fee request and the source of the allegation of fact or law.

*Id.* at 8. The district court denied the motion in a text entry.

At the show-cause hearing, SLF renewed its motion for a bill of particulars. The district court denied the motion, stating, "I don't know how I could make it more specific under Rule 11 than I've made it, so your objection is overruled. I don't think there's any idea of a criminal contempt at all. Rule 11 has a type of contempt, and that's what we're proceeding on." R. Doc. 133, at 3. The court then stated:

As set out in my June 29, 2023, order, Mr. Sanford has been directed to show cause as to why he and his law firm should not be held in violation of Rule 11; specifically, how his settlement negotiations, fee demands, fee requests from the Court and meritless appeals do not amount to (1) presenting claims for an improper purpose; (2) causing unnecessary delay; (3) needlessly increasing the cost of litigation; (4) presenting frivolous arguments to support his claim; and (5) presenting arguments with no evidentiary support.

*Id.* at 3–4. When SLF's counsel inquired what document the court was reading from, the court responded, "I'm reading my outline." *Id.* at 4. SLF's counsel replied, "But it's not in the show[-]cause order. That's the problem." *Id.* SLF then called its first and only witness, Greg Northen, the attorney for the defendants in the *Vines* case. Northen testified that the FLSA negotiations "included both potential back wages and

-7-

other damages claimed by the class members and then a separate amount for attorney's fees payable to the Sanford Law Firm." *Id.* at 6. Northen stated that he "didn't use [the] term[]" "vexatious" when speaking with SLF and "didn't have a practice of complaining at opposing counsel whenever we negotiated." *Id.* at 7. Northen characterized the *Vines* settlement as "one of the more complicated settlements just because of the two classes." *Id.* at 7–8. He confirmed that the defendants "agreed to pay the amounts demanded by plaintiffs." *Id.* at 8.

SLF called no further witnesses; instead, SLF's counsel renewed SLF's request for a bill of particulars. When the court inquired whether SLF was resting, SLF's counsel responded:

> Yes, sir. We rest. But, again, subject to our preliminary position, which we've now expressed both in writing and before you, that we don't have sufficient notice of what it is that he has done and that we believe that it affects matters that are subject to various—even laying aside the merits issue, which has some res judicata issues, there are going to be res judicata issues with regard to sanctions and defenses such as laches, waiver, res judicata, since we do not know what all we're accused of.

*Id.* at 9.

At the conclusion of the show-cause hearing, the court found SLF and Sanford in violation of Rule 11,[7] suspended SLF and Sanford from practicing law in

---

[7]The court set forth the following Rule 11 violations:

1. SLF and Mr. Sanford knowingly and intentionally attempted to settle liability and fees together, contrary to the *Barbee* case, a case it was familiar with, having been the plaintiff's lawyer in that case.

2. SLF and Mr. Sanford knowingly and intentionally used

-8-

the EDAR for two years, ordered SLF and Sanford to provide other jurisdictions in

---

> simultaneous negotiations of fees and liability for the improper purpose
> of exacting unearned fees from the defendant, resulting in a needless
> delay and increasing the cost of litigation.
>
> .      .      .
>
> 3. SLF and Mr. Sanford knowingly and repeatedly misled the
> Court, claiming that liability and fees were negotiated separately. After
> I discovered that this was not true, SLF and Mr. Sanford continued to
> argue, contrary to the record, that they did no such thing. Additionally,
> they have continued to litigate this issue knowing that it was meritless.
> The argument was rejected first by me and then by the Eighth Circuit.
>
> 4. SLF and Mr. Sanford have systematically engaged in a practice
> of coercing defendants into paying fees that are unearned, unreasonable
> and unsupported by their own records.
>
> 5. SLF and Mr. Sanford have repeatedly and knowingly filed fee
> petitions that request excessive rates and include exaggerated time
> entries. Despite repeated rulings by me and by every other judge in the
> Eastern and Western Districts of Arkansas chastising this practice, this
> pattern still persisted. SLF knows that the fee submissions, in this case
> and others, are unsupported by existing law and lack evidentiary
> support.
>
> 6. After the first appeal, SLF filed a motion to alter judgment and
> supplemental motion for fees and costs claiming that it was successful
> on appeal. Any reasonable lawyer would know that this claim was not
> true. This argument also was rejected by the Eighth Circuit following a
> second appeal.

*Id.* at 10–12.

-9-

which they practice a copy of the show-cause order and the order imposing sanctions, and ordered SLF and Sanford not to attempt to circumvent the suspension. SLF's counsel requested that the ruling be stayed while on appeal to this court, but the district court denied the request.

SLF's counsel then noted that the show-cause order had directed "SLF, through its managing partner, Josh Sanford," to show cause but that the court "appeared to be sanctioning Mr. Sanford personally." *Id*. at 16. SLF's counsel argued that the show-cause order refers only to "'it,' the Sanford Law Firm," not Sanford. *Id.* The district court overruled the objection. The court then denied SLF's counsel's request for a ten-day stay of the order so that SLF could seek relief in the Eighth Circuit on an emergency basis.

In accordance with its oral ruling at the show-cause hearing, the court then entered its written order on Rule 11 sanctions against Sanford and SLF. The court rejected all of SLF's challenges to the show-cause order and hearing. First, the court determined that "no undue or prejudicial delay" occurred prior to the court's show-cause order. R. Doc. 135, at 3. The court noted, "While the unprofessional practices in this case have persisted for years, the Eighth Circuit's opinion affirming my fees ruling was issued on June 19, 2023. The show-cause order was entered *six minutes* later." *Id.* (emphasis added) (footnotes omitted). Second, the court concluded that the outline it used during the show-cause hearing "simply recited Rule 11" and "should have been no surprise." *Id.* Third, the court opined that Northen—the only witness—"obviously was reluctant to say much and only alluded to evidence already in the record." *Id.* Fourth, the court characterized its reference in the show-cause order to "it" instead of SLF and Sanford as a "scrivener's error" and found Sanford "individually responsible" as the "managing partner." *Id.* "Logically, if SLF were sanctioned," the court explained, "then Mr. Sanford, individually, would be included." *Id.* Fifth, the court concluded that its "show-cause order clearly and

-10-

succinctly put[] SLF and Mr. Sanford on notice" about potential Rule 11 violations for "conducting their settlement negotiations in a manner that violated *Barbee*, attempting to extort unearned fees from [d]efendant, unnecessarily extending litigation to get those unearned fees, and repeatedly submitt[ing] (in this case and others) fee requests for excessive hourly rates and inflated hours." *Id.* at 4.

After outlining the Rule 11 violations previously announced in its oral ruling, the court explained that a monetary sanction would not sufficiently deter SLF and Sanford because "some nominal monetary sanction . . . would just be the cost of doing business" for them to "continue to collect unearned fees." *Id.* at 15. According to the court, SLF already had the opportunity to "purge itself of contempt" given the extensive scrutiny and chastisement of SLF's billing practices by courts in "dozens of cases," but SLF had "refused to comply." *Id.* at 15–16. The court found that "Mr. Sanford micro-manages all of his associates, no matter how seasoned" and "admit[ted] as much"; as a result, the court had "no reliable way to suspend Mr. Sanford without suspending the firm." *Id.* at 16. Consistent with its oral ruling, the court sanctioned SLF and Sanford by suspending them from practicing law in federal court in the EDAR for two years, ordering them to provide other jurisdictions in which they practice a copy of the show-cause order and the order imposing sanctions, and ordering them not to attempt to circumvent the suspension. However, the court subsequently entered an amended order and stated in the accompanying text entry, "Upon mature reflection, rather than total suspension in the EDAR, Mr. Sanford and SLF are suspended from practicing in any FLSA cases in the EDAR for a term of two years, as set out at the end of this order. All other sanctions remain the same." R. Doc. 140, at 1 n.1.

## II. *Discussion*

On appeal, SLF and Sanford argue that the district court abused its discretion in denying their motion for a bill of particulars and imposing Rule 11 sanctions by

-11-

failing to provide "adequate notice of the specific alleged misconduct at issue," notice "that Josh Sanford may be personally sanctioned," and notice of "what sanctions it intended to impose." Appellants' Br. at 15, 26.[8] Additionally, they argue that the district court improperly delayed in issuing its show-cause order. Finally, they contend that the district court's imposition of sanctions was improper under its inherent power and under the Federal Rules of Disciplinary Enforcement.

We review for an abuse of discretion "a district court's denial of a motion for a bill of particulars, *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009), and Rule 11 determinations, *Kezhaya v. City of Belle Plaine*, 78 F.4th 1045, 1049 (8th Cir. 2023). "A district court abuses its discretion if it bases its ruling on a clearly erroneous assessment of the evidence or an erroneous view of the law." *Kezhaya*, 78 F.4th at 1049. "A court's discretion narrows as the severity of the sanction or remedy it elects increases, or when it initiates the subject itself. When a sanction is imposed on the court's own motion or is more severe than most, the abuse of discretion standard is applied with particular strictness." *Sec. Nat'l Bank of Sioux City v. Jones Day*, 800 F.3d 936, 941 (8th Cir. 2015) (cleaned up).

Federal Rule of Civil Procedure 11(b)(1) provides that when an attorney "present[s] to the court a pleading, written motion, or other paper," that attorney

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[8]Although court-appointed amicus argues that Sanford and SLF did not preserve for appeal their challenge to the district court's failure to provide notice of the sanctions, we conclude that they preserved the issue by arguing in their motion for a bill of particulars that the district court's show-cause order was "inadequate to advise SLF what [it] is alleged to have done and what *jeopardy it faces* under the order." R. Doc. 122, at 1 (emphases added).

-12-

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

A. *Notice*
1. *Notice of Specific Conduct*

"Rule 11 provides a specific procedure to be followed when sanctions are considered." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006). Before "impos[ing] Rule 11 sanctions on its own initiative," the district court "must first enter an order describing the *specific conduct* that appears to violate Rule 11(b), and direct the attorney to show cause why he has not violated the rule." *Id.* (emphasis added); *see also* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why *conduct specifically described* in the order has not violated Rule 11(b)." (emphasis added)). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A district court must limit a sanction imposed under Rule 11 "to what suffices to deter repetition of the conduct or comparable conduct by others similarly

-13-

situated. The sanction may include nonmonetary directives." Fed. R. Civ. P. 11(c)(4). The district court's "order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6).

"Rule 11 does not license a district court to sanction any action by an attorney or party that it disapproves of. Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court." *Coltrade Int'l, Inc. v. United States*, 973 F.2d 128, 131 (2d Cir. 1992) (cleaned up). A district court's "findings of frivolous litigation, dilatory tactics, or bad faith are insufficient to support the award of sanctions under Rule 11." *Id.* "[G]eneral findings, without greater specificity, are an insufficient basis for [a court's] imposition of sanctions under Rule 11." *Id.* at 132. The court must "specify which papers were submitted to the court, and by whom, in violation of Rule 11." *Id.*

What constitutes "adequate notice of the specific conduct that appear[s] to violate Rule 11"? *Clark*, 460 F.3d at 1008. In *Clark*, we held that a district court afforded an attorney "adequate notice of the specific conduct that appeared to violate Rule 11" when the district court's show-cause order "incorporated by reference the orders granting summary judgment, which detailed the court's objections to [a specific pleading]" filed by the attorney. *Id.* The district court in *Clark* identified specific paragraphs deemed in violation of Rule 11, as well as specific objectionable conduct. *Id.* at 1009.

Here, unlike in *Clark*, the district court did not identify a specific pleading and detail the specific, objectionable conduct contained within that pleading. Instead, in the show-cause order, the district court summarized the settlement negotiations and fee demands that SLF made in *Vines* and generally noted SLF's "inappropriate and unethical billing and settlement negotiations" recognized by courts in both the Eastern and Western Districts of Arkansas. R. Doc. 120, at 3. Nor did the district

-14-

court identify a pleading containing objectionable conduct in response to SLF and Sanford's motion for a bill of particulars. And, by the court's own statement, the outline it read from at the show-cause hearing "simply recited Rule 11." R. Doc. 135, at 3. Under the plain language of Rule 11(c)(3) and *Clark*, the district court was required to provide SLF and Sanford with notice of a specific pleading and detail specific, objectionable conduct found within that pleading. The court legally erred by not providing that information. Such error constitutes an abuse of discretion.[9]

## 2. *Notice of Sanction*

In addition to requiring notice of the specific conduct that potentially violates Rule 11, our precedent also requires that "[b]efore imposing the 'most severe sanctions,' a district court should provide 'clear notice' as to the form of the sanction" to comport with due process. *Jones Day*, 800 F.3d at 944 (quoting *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993)). "Particularized notice may be of critical importance when 'a lawyer or firm's reputation is at stake' because 'sanctions act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorney's career.'" *Id.* (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Actions*, 278 F.3d 175, 191 (3d Cir. 2002)). The party must know "the nature of a potential sanction" in order to "respond in a cogent way." *Id.* "[N]otice of the type and severity of the sanction being considered 'may lead to substantially different (e.g., more detailed [and] differently directed) responses' by the targeted lawyer." *Id.* (second alteration in original) (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(D)(1)(d), at 388 (5th ed. 1998)).

---

[9]Although the district court was not required to do a line-by-line analysis of a specific pleading, it was, at a minimum, required to identify the objectionable conduct within that pleading. *See Clark*, 460 F.3d at 1009.

-15-

What qualifies as a "most severe sanction" requiring "clear notice" to an attorney? We have previously found "instructive" precedent from the Third Circuit. *Id.* at 944–45 (citing *In re Tutu Wells Contamination Litig.*, 120 F.3d 368 (3d Cir. 1997), *overruled on other grounds by Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 119 (1999); *In re Prudential*, 278 F.3d at 191–93). In *In re Tutu Wells*, the Third Circuit held that attorneys' due process rights were violated because they did not "receive[] particularized notice that the court was contemplating suspending them from practicing law as a sanction." 120 F.3d at 380. "Although the court made clear the legal rules on which it would base sanctions and the reasons for the sanctions," the court never discussed suspension as a possible sanction. *Id.* "Knowing that they faced possible suspension as well as possible monetary sanctions," the Third Circuit explained, "would have been vitally important to [the attorneys] as they prepared for the sanctions proceeding" because

> [i]n addition to presenting legal and factual arguments pertaining to the particular conduct that gave rise to the sanctions proceedings and their individual culpability, the attorneys likely would have presented evidence concerning their professional careers, their contributions to the legal profession and the community, their character, and the like. The proceedings would have followed a different path as the alleged offenders led the court to consider a wider array of information. Put differently, had [the attorneys] been on notice that they faced suspension, they doubtless would have utilized their opportunity to be heard to raise different matters. As it happened, because of the lack of notice, the attorneys' opportunity to be heard was less than meaningful; they were not given the appropriate opportunity to present relevant defenses to the penalties which they were ultimately assessed.

*Id.* at 381. In sum, "[t]he Third Circuit concluded that counsel should be notified in advance about the nature of any potential sanction which could leave 'an indelible and deleterious imprint on [their] career, reputation, and future opportunities.'" *Jones*

-16-

*Day*, 800 F.3d at 944 (second alteration in original) (quoting *In re Tutu Wells*, 120 F.3d at 381 n.10).

In *In re Prudential*, the Third Circuit reversed a district court's order imposing, as a sanction, "a non-monetary requirement that [the attorney] attach a copy of [the order sanctioning the attorney] as well as a certification that he had paid the attorneys fees ordered therein, to all future motions for *pro hac vice* admission in the United States District Court for the District of New Jersey" for a five-year period. 278 F.3d at 180. It was not clear that the attorney "had notice that the court was considering requiring him to attach his scarlet letter to his *pro hac*[] *vice* admissions in the District of New Jersey." *Id.* at 193. The Third Circuit held that the attorney was not "afforded the kind of 'particularized' notice and opportunity to defend against this unique sanction that due process requires," *id.*, which was "damaging to his reputation and that of his firm," *id.* at 192. In determining that the attorney lacked adequate notice of the sanction, the Third Circuit stressed "the impact that such a sanction would no doubt have on [the attorney's] ability to practice his trade. Although the sanction [was] not a suspension from practice *per se*, it certainly raise[d] similar concerns, and those concerns ought to [have] inform[ed] the particularity of notice . . . given to allow [the attorney] to properly defend against such a sanction." *Id.* at 193.

Applying the rationale of *In re Tutu Wells* and *In re Prudential*, we reversed a district court's order requiring an attorney "1) to produce a discovery training video dealing with the impropriety of form objections, witness coaching, and excessive interruptions and 2) to distribute the video to most of the attorneys in her national law firm" as a sanction for misconduct. *Jones Day*, 800 F.3d at 938. We held that the district court failed to give any "real notice of the nature of the sanction the court had in mind." *Id.* at 945. The district court's "advance notice of [its] reasons for considering sanctions" was not sufficient because "nothing was mentioned about [the sanction's] unusual nature requiring counsel to produce and distribute an instructional

-17-

video." *Id.* Nor did the district court discuss any potential sanctions at the sanctions hearing; instead, "[t]he nature of the sanction became apparent only in the court's final published opinion in the matter." *Id.* We explained that the district court was required "to give particularized notice of" "[s]o unusual a sanction" "so that counsel would have a meaningful opportunity to respond." *Id.* Counsel was entitled to such notice because "[o]nce information about an unusual sanction appears in public, the damage to the subject's career, reputation, and future professional opportunities can be difficult if not impossible to repair." *Id.* The attorney's "reputation was one of her most important professional assets, and the district court's unusual sanction might leave an indelible and deleterious black mark on her career." *Id.* (cleaned up).

Here, the sanctions imposed on SLF and Sanford are comparable to those imposed in *In re Tutu Wells*, *In re Prudential*, and *Jones Day*. Similar to *In re Tutu Wells*, the court sanctioned SLF and Sanford by suspending them from practicing in any FLSA case in the EDAR for two years. And like in *In re Prudential*, the court ordered SLF and Sanford to provide other jurisdictions in which they practice a copy of the "scarlet letter" show-cause order and the order imposing sanctions. As in *Jones Day*, we hold that SLF and Sanford were entitled to notice of these potential sanctions that directly impact their reputation and livelihood. Furthermore, Sanford was entitled to notice that the district court was considering these harsh sanctions against him *personally*. The show-cause order only required "SLF (*through its managing partner Josh Sanford*) . . . to show-cause . . .  as to why *it* should not be *held in contempt of court and sanctioned* under Federal Rule of Civil Procedure 11." R. Doc. 120, at 4 (emphases added). Although Rule 11(c)(1) requires a court to hold "a law firm . . . jointly responsible for a violation committed by its partner, associate, or employee," it does not require the converse. The district court's notice insufficiency is legal error that constitutes an abuse of discretion.[10]

---

[10]Because we conclude that the district court failed to provide proper notice, we need not address SLF and Sanford's argument that the district court improperly

-18-

## B. *Remedy*

SLF and Sanford ask this court to reverse the district court's order imposing sanctions with no remand to follow.

"We have at times vacated a sanctions order and remanded for further proceedings, but in this case a remand would have little value." *Jones Day*, 800 F.3d at 945 (citation omitted). This court affirmed a reduced fee award based on the district court's finding of the law firm's "egregious" and "unprofessional" conduct. *Vines II*, 2023 WL 4247395, at *1. Even if we assume that SLF and Sanford also engaged in sanctionable conduct under Rule 11, they have "already suffered inevitable financial and personal costs" as a result of the proceedings in the *Vines* case, *Jones Day*, 800 F.3d at 945, and the deterrent effect of the district court's previous actions has not yet been tested.

## III. *Conclusion*

Accordingly, we reverse the district court's order imposing sanctions on SLF and Sanford.

——————————————————

————————————

delayed in issuing its show-cause order.  SLF and Sanford also argue that the district court's imposition of sanctions was improper under its inherent powers, local rules, and Federal Rules of Disciplinary Enforcement; therefore, these sources do not serve as an alternative "route" by which the court could impose sanctions. Appellants' Br. at 32. Because the district court did not rely on its inherent powers, local rules, or Federal Rules of Disciplinary enforcement to impose the sanctions, we need not address this issue.

-19-

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 28, 2024

Jeffrey M. Rosenzweig
Suite 310
300 Spring Building
Little Rock, AR  72201-2421

        RE:  23-2682  In re: Sanford Law Firm, et al

Dear Counsel:

        The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

        Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                Maureen W. Gornik
                                Acting Clerk of Court

CRJ

Enclosure(s)

cc:      Clerk, U.S. District Court, Eastern District of Arkansas
          Landon Wade Magnusson
          Honorable Billy Roy Wilson

        District Court/Agency Case Number(s):   4:18-cv-00509-BRW

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 28, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE:  23-2682  In re: Sanford Law Firm, et al

Dear Sir or Madam:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellants and appeared on the appellants' brief, was Jeffrey M. Rosenzweig, of Little Rock, AR.

     Counsel who presented argument on behalf of the amicus curiae and appeared on the amicus curiae's brief, was Landon Wade Magnusson, of Liberty, MO.

     The judge who heard the case in the district court was Honorable Billy Roy Wilson.

     If you have any questions concerning this case, please call this office.

                  Maureen W. Gornik
                  Acting Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

     District Court/Agency Case Number(s):  4:18-cv-00509-BRW